IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00997-TPO

**DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased,**

PLAINTIFF,

v.

**MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC,**

**TOTAL QUALITY LOGISTICS, LLC,**

**INTSEL STEEL WEST LLC**

**TRIPLE-S STEEL HOLDINGS, INC.,**

**SEARING INDUSTRIES, INC. and**

**IGNACIO CRUZ-MENDOZA,**

DEFENDANTS.

**DEFENDANTS INTSEL STEEL WEST LLC'S AND TRIPLE-S STEEL HOLDINGS, INC.'S MOTION TO DISMISS**

COME NOW Defendants, Intsel Steel West LLC ("Intsel") and Triple-Steel Holdings, Inc. ("Triple-S," together "Defendants" herein), by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby move for the dismissal of Counts I, II, III, V, VII, VIII, X and XI of Plaintiff Deann Miller's Amended Complaint as against them on the grounds

that they fail to state a claim upon which relief can be granted. In support thereof, these Defendants state as follows:

**CERTIFICATE OF CONFERRAL**

Counsel for these Defendants hereby certifies that he spoke with the opposing counsel, Mr. Lindsey, regarding the merits of the Amended Complaint when it was originally filed. Subsequently, counsel called opposing counsel to discuss the specifics of this motion on October 27, 2025 and was unable to speak with anyone as all counsel were in a day long meeting. Pursuant to Section 9 of the Uniform Civil Practice Standards for Magistrate Judges, opposing counsel was already informed of the factual and legal deficiencies of his client's claims and Defendants Intsel's and Triple-S' basis for relief that are patently uncurable by mere amendment and remains opposed.

**BACKGROUND**

According to Plaintiff Deann Miller's First Amended Complaint ("Complaint") filed on July 14, 2025, this case arises from a motor vehicle accident occurred on Highway 285 near Conifer in Jefferson County, Colorado on June 11, 2024 ("the Accident"), that resulted in the death of her husband, Mr. Scott Miller, due to the alleged negligence of Defendant Ignacio Cruz-Mendoza ("Cruz") (Compl., ¶ 1, ¶¶ 57-81). At the time of the Accident, Cruz was operating a tractor-trailer for his employer, Defendant Manrique Agramon d/b/a Monique Trucking ("Monique Trucking") while hauling a load of steel materials weighing approximately 47,000 lbs. See id., *generally*; see also *Bill of Lading* (Compl., ¶ 60 and attached hereto as **Exhibit 1**). Cruz picked up the load from Defendant Searing Industries, Inc.'s ("Searing") facility in Cheyenne, Wyoming on the date of the Accident for delivery to Defendants Intsel and Triple-S in Farmington, New Mexico. That arrangement was made independently by Defendant Total Quality Logistics

2

LLC ("TQL"), the third-party broker involved in the isolated transaction. See id. Relevant here, the Court will note that the Bill of Lading was issued by Searing; and, while it gives reference to Intsel, the load, and the delivery location, the broker is clearly identified as TQL, and there is no evidence any agents, employees or representatives of these Defendants were present or otherwise involved in the loading of that material. Id. Rather, Plaintiff alleges that Searing employees provided direction to Cruz in securing the steel materials while providing little, if any, additional assistance; and, they did so negligently and in violation of Federal Motor Carrier Safety Act ("FMCSA") standards applicable to commercial carriers when such weights are involved before allowing him to depart its facility (Compl., ¶¶ 64 – 73; See also *Deposition of Ignacio Cruz-Mendoza* at 48:14-19, attached to Plaintiff's Complaint as Exhibit 2). Plaintiff cites to those regulations at length in her 57-page Complaint with numerous paragraphs and subparts; but, the Court will note that the mere recitations of statutory law or regulations are devoid of any factual allegations that would subject these Defendants to liability. More importantly, neither Defendant Intsel nor Triple-S are referenced whatsoever in Cruz' deposition as having been involved in the coordination, loading or any other actions relevant to the delivery that would allow grounds for any liability on their part for the Accident. See id., *generally*.

While en route to complete the delivery, Cruz was allegedly operating the tractor-trailer at a high rate of speed, approximately 60-80 m.p.h., and lost control while attempting to pass another vehicle on Highway 285, causing a chain collision involving five other vehicles, including Mr. Miller's. The tractor-trailer jack-knifed, dumping the heavy load of steel pipe onto Mr. Miller's pickup truck, resulting in his death. (Compl., ¶¶ 74-81). As a result of the Accident, Cruz was subsequently charged with violating: 1) C.R.S. § 18-3-106(1)(a), "Vehicular Homicide"; 2) C.R.S.

3

§ 18-3-205(1)(a), "Vehicular Assault"; 3) C.R.S. § 42-4-1401(1), "Reckless Driving"; and, 4) C.R.S. § 42-2-404(1), "Driving a Commercial Vehicle (Not Qualified)." Following his conviction, Cruz was briefly imprisoned in Jefferson County Jail before Federal Authorities deported him to Mexico upon release. (Compl., ¶¶ 21, 81-82).[1] As to his employer, Defendant Monique Trucking was subsequently issued an "Imminent Hazard – Operations Out-of-Service Order" on July 2, 2024 ("the Order"), based upon its own negligent acts and omissions and those of Cruz as its employee in relation to the Accident, and other prior violations of the FMCSA for which these Defendants had no prior knowledge, whether actual or constructive, given they never dealt with either Defendant Cruz nor Monique prior to the Accident and this lawsuit. To the contrary, IT WAS TQL's and/or Searing's investigation and selection of an appropriate and qualified carrier to fulfill the delivery; not Intsel and Triple S. Notably, Plaintiff makes no factual allegations that any of the other Co-Defendants were investigated, penalized or charged with any violations or crimes in relation to the Accident.

Plaintiff's Amended Complaint alleges eleven (11) separate claims for relief (styled as "Counts") against the six (6) named Defendants in various combinations in an apparent effort to establish some grounds for joint and several liability, even if there are no such basis. (See, e.g. Compl., ¶¶ 32-43). However, relevant to the present Motion and requested relief, the following eight (8) claims are directed to Defendants Intsel and Triple-S and other parties; and, they are grouped according to the manner they are to be addressed in the "Argument" Section below based on their common questions of law and fact:

---

[1] Plaintiff seeks to raise issue with Cruz' numerous past deportations, whether voluntary or involuntary, but even if proven, such events and actions would constitute improper character evidence and would be prejudicial if considered in this matter as his immigration status has no bearing on his suitability as a commercial driver prior to the Accident. See, e.g., Colo. R. Evid. 608(1), 404(b) & 403.

4

- **Group 1 – Vicarious Liability / Respondeat Superior Claims:**

    o **Count I** – Wrongful Death under C.R.S. §§ 13-21-202 and 13-21-201(1)(a)(I) ("the Wrongful Death Act") against All Defendants;

    o **Count II** – Negligence and Recklessness against All Defendants;

- **Group 2 – Negligent Hiring, Training, Supervision Claims:**

    o **Count III** – Negligent and/or Reckless Hiring / Supervision / Retention / "Negligent Selection" of Cruz against all Defendants;

    o **Count V** – Negligent and/or Reckless Hiring / Supervision / Retention / "Negligent Selection" of Monique Trucking against TQL, Intsel, Triple-S and Searing;

- **Group 3 – Negligent Undertaking Claims:**

    o **Count VII** – Negligent Undertaking against Intsel;

    o **Count VIII** – Negligent Undertaking against Triple-S and Searing;

- **Group 4 – Joint Venture / Joint Enterprise Claims:**

    o **Count X** – Joint Venture vs. All Defendants; and,

    o **Count XI** – Joint Enterprise Liability against All Defendants.

As addressed in greater detail below, Defendants Intsel and Triple-S are entitled to full dismissal under Fed. R. Civ. P. 12(b)(6) on each of the foregoing claims against them because:

1. Defendants Intsel and Triple-S bore no contractual or agency relationship with Defendants Monique Trucking nor its employee Cruz that would provide them with control or the right to control Monique Trucking's or Cruz' independent actions

sufficient to establish vicarious liability for wrongful death or negligence under the doctrine of *respondeat superior*;

2. Defendants Intsel and Triple-S hire, did not retain, supervise or select Monique Trucking or Cruz for the delivery that resulted in the Accident;

3. Rather, TQL as the broker and/or Searing as the supplier investigated and verified the same prior to loading and delivery;

4. Neither Intsel nor Triple-S had any ownership interest in the tractor-trailer owned and/or operated by Monique Trucking and/or "Jose Luis" as referenced in Cruz' Deposition and therefore bore no duty to ensure that its registration or maintenance were current under the FMCSA or other applicable statutes or regulations (See Compl. at Ex. 2 26:8-25; 27:1-15);

5. No agents, employees or representatives of Defendants Intsel or Triple-S were present or otherwise took part or provided direction for the loading and securing of the steel materials pre-Accident as alleged; nor did they possess or exercise any right of ownership or control of any of the Co-Defendants' acts or omissions in relation to that event, namely those of Cruz and his employer, Monique Trucking or Searing;

6. While Plaintiff cites to voluminous FMCSA standards and regulations as a collective grounds for the Defendants' alleged joint and several liability (See, e.g., Compl., ¶¶ 8, 26, 87, 117, 126, 139, 148 - 149, 161, 173, 185, 197), she cites to no independent violations on behalf of Intsel or Triple-S to support the same;

7. For the "Negligent Undertaking" claims against Intsel and Triple-S, even if such a claim is recognized under Colorado law per Rest. 2d Torts § 324(A) and related case law since the Colorado Supreme Court adopted the doctrine in *De Caire v. Public Service Co.*, 479 P.2d 964 (Colo. 1971), that cause of action is more commonly reserved for "Good Samaritan" or "assumption of risk" situations where an individual or entity voluntarily undertakes actions for another's safety and harm nevertheless results and does not apply to these Defendants under the circumstances as a matter of law absent some special relationship; and,

8. In the absence of any contractual agreements to the contrary, written or implied, Plaintiff fails to allege facts sufficient to establish a "for profit," partnership relationship to establish a claim for "Joint Venture" or "Joint Enterprise" liability against Defendants Intsel or Triple-S as a matter of law.

In light of the foregoing, these Defendants are entitled to the full dismissal of the foregoing claims against them as alleged in Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because they fail to state a claim upon which relief can be granted.

## **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations, alterations omitted). Nor, in this context, does "[p]lausible" mean "likely to be true," rather, plausibility "must refer to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Lastly, Fed. R. Civ. P. 12(e) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion myst be treated as one for summary judgment under Rule 56 […]." However, "[t]hough 'matters outside the pleadings' may not be considered on a Fed. R. Civ. P. 12 motion to dismiss, documents necessarily embraced by complaint are not matters outside pleading." See, e.g., *Enervations, Inc. v. 3M,* 380 F.3d 1066, 1069 (8th Cir. 2004), citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997). This is because "[…] if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." Id. (internal citations omitted).

8

That exception should be considered here where Plaintiff has cited to and included photographs of documents such as the Bill of Lading that are critically relevant to Defendants' requested relief. (See Compl., ¶ 60).

## ARGUMENT

### I. Plaintiff's Claims as to Defendants Intsel and Triple-S must be dismissed for lack of any contractual or agency relationships with the Co-Defendants that would provide a duty for Negligence and/or Vicarious Liability.

Plaintiff's general claims against each and all of the six (6) Defendants named in this lawsuit, eleven (11) in total, sound in general negligence for her husband's wrongful death. Although they are presented in various forms, each are subject to the common and consistent defenses echoed above. While Scott Miller's death was a tragic event, in the absence of any contractual or agency relationship that would provide a duty and basis for potential liability, these Defendants are simply not liable in any manner for the same as a matter of law.

**A. Wrongful Death Act and General Negligence Claims.**

Section 13-21-201(1) of Colorado's "Wrongful Death Act" provides that "[w]hen any person dies from the negligence, unskillfulness, or criminal intent of any officer, agent, servant, or employee while running, conducting, or managing any […] coach or other conveyance operated for the purpose of carrying either freight or passengers for hire […] the corporation or individuals who employee any such officer, agent, servant, […] driver […] or who owns such conveyance […]" shall be liable to the surviving spouse or other heirs by election. See C.R.S. § 13-21-201(1), *et seq.* The cause of action for "Wrongful Death" did not exist at common law, and is a creature created wholly by statute for the purpose of compensating "those who sustain pecuniary injury by the loss of a spouse or parent." See, e.g., *Niven v. Falkenburg*, 553 F. Supp. 1021, 1023 (D. Colo.

9

1983). Consequently, the statute must be strictly construed to avoid any inequity or injustice that may arise if such relationships did not exist between the negligent actor and those whom Plaintiff seeks to hold liable. See, e.g., *Martin v. Cuellar,* 279 P.2d 843, 844 (Colo. 1955). And, per the landmark case of *Vigil v. Franklin,* 1013 P.3d 322, 325 (Colo. 2004), the threshold and dispositive question in a negligence action is whether these Defendants owed a duty to Plaintiff before any of the subsequent elements of such claims are even considered. *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004). For the reasons that follow, they neither owed nor undertook any requisite duty.

In *Vigil* (supra.), the Colorado Supreme Court held that whether a defendant owes a duty to a plaintiff at common law is one for the court to determine and is ultimately dispositive. See, e.g., *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 465 (Colo. 2003). "'The existence and scope of the duty'" essentially addresses "'whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection.'" *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987) (quoting *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980)). A defendant always has the option at common law of arguing that he did not owe a duty to an injured plaintiff. Structurally, this argument is independent of and arises before other recognized negligent tort defenses such as contributory negligence and comparative fault. Where a defendant successfully argues no duty, there is no subsequent inquiry into negligence; considering additional defenses under the breach, causation, and damages elements is entirely unnecessary. See id. Therefore, in the absence of a duty to Plaintiff, each of her claims against Defendants Intsel and Triple-S fail as a matter of law.

Here, Plaintiff generally alleges that these Defendants are liable for Monique Trucking's and Cruz' negligence for the Accident, but her claims fail because it is undisputed that neither

10

Defendant Intsel nor Triple-S bore any relationship – whether contractually, under the principles of agency or otherwise – with them that could provide a plausible basis for vicarious liability under the doctrine of *respondeat superior.* See, e.g., *Daly v. Aspen Ctr. For Women's Health, Inc.*, 134 P.3d 450, 452 (Colo. App. 2005) (internal citations omitted). This is because the doctrine generally will not give rise to vicarious liability when negligent work is performed by an independent contractor as they are not subject to the principal's control. See id. (citing *Norton v. Gilman*, 949 P.2d 565, (Colo. 1997) ("Under the common law, the most important factor in determining whether a worker qualifies as an employee is the alleged employer's right to control the details of performance")). The main exception for this general rule is when the contractor is to perform inherently dangerous activities for the principal. See *Huddleston v. Union Rural Elec. Ass'n*, 841 P.2d 282, 287 (Colo. 1992). The Colorado Supreme Court has concluded that an activity will qualify as inherently dangerous when it (1) presents a special or peculiar danger to others that is inherent in the nature of the activity or the particular circumstances under which the activity is to be performed, that (2) is different in kind from the ordinary risks that commonly confront persons in the community, and (3) that the employer knows or should know is inherent in the nature of the activity or in the particular circumstances under which the activity is to be performed. Id.

These Defendants do not deny that motor vehicle accidents can happen, and the trucking industry is no stranger to that phenomenon. However, trucking is not an inherently dangerous activity that provides any peculiar or special danger to others that is inherent in the nature of the activity. It is also not distinct from the danger normally present to community members engaging in driving on the road. Whenever someone drives on the road they are subjecting themselves to the risk of car accidents or the dangers that are always present on the road, an activity undertaken by

millions in the United States daily. Thus, before considering any potential liability, Plaintiff's claims are contingent on the issue of control or right to control; and, Defendants Intsel and Triple-S would note the following dispositive facts.

First, Cruz testified in his deposition that he was provided instruction from a third-party broker, likely TQL by and through his supervisors at Monique Trucking, to pick up the load from Searing's facility in Cheyenne, Wyoming and deliver it to Intsel and/or Triple-S on the date of the Accident. See *Deposition of Ignacio Cruz-Mendoza* at ¶¶ 10:10-25; 11:1-8; 14:7-25; 15; 16:1-12 (attached to Plaintiff's Complaint as Exhibit 2). However, there are no references whatsoever to Intsel or Triple S in Defendant Cruz' deposition testimony, only an unidentified female broker of unspecified name and number at Monique Trucking and/or TQL he identified as his "broker." Id. Thus, apart from Plaintiff's threadbare allegations, she fails to plausibly prove an employment or agency relationship between Cruz and Monique Trucking and these Defendants sufficient to maintain her claims.

Second, Defendant Cruz testified that the Peterbilt tractor-trailer combination he was operating at the time of the Accident was owned by a gentleman named "Jose Luis" who bore no relationship with Defendants Intsel or Triple-S. See id. at 26 – 27. Cruz further testified that he had only one prior contact with him for payment. However, he provides no further information regarding the maintenance or inspections of that vehicle, nor does he indicate that Defendants Intsel or Triple-S had any obligations or duty regarding the same. Id. Thus, even if the jury or Court would find that Cruz experienced a brake failure that contributed to the Accident and Mr. Miller's subsequent death, neither of these Defendants bore responsibility for the same absent ownership or an obligation to maintain and service the vehicle. Id. at 63, *generally*.

Third, despite the Order, these Defendants did not act unreasonably in reliance upon Monique Trucking's or Cruz' USDOT and/or MC numbers, which were valid and active prior to the Accident, put simply because the Defendants did not contract with or retain Monique Truckiing or Cruz. Furthermore, Defendants Intsel and Triple-S did not hire, retain, control or select Monique Trucking or Cruz. Those actions were undertaken by TQL and/or Searing. Defendants Intsel and Triple-S merely purchased steel that Searing was to deliver.

Fourth, Cruz' deposition testimony provides no factual basis that any agents, employees or representatives of Defendants Intsel or Triple-S were present at the time of the loading or departure of the Peterbilt or otherwise provided any independent direction before Cruz undertook the delivery from Searing's facility in Cheyenne to Intsel in New Mexico. See id. at 37:16-25; 38-51.

In sum, Plaintiff fails to plausibly present a basis for a duty as between Defendants Intsel and Triple-S for the wrongful death of her husband pursuant to the Act. Plaintiff cannot "will" a relationship between two parties into existence merely by stating that it does exist. Such allegations are purely self-serving and fail the plausibility standards established by the foregoing authorities (See *Twombly* and *Iqbal*, supra.) and are likely asserted only to maintain some unsubstantiated avenue for recovery given Monique Trucking's dissolution post-Order and Cruz' deportation post-Accident. Thus, her claims against these Defendants must be dismissed as a matter of law.

**B. Negligent Hiring, Training, Supervision and "Selection" Claims.**

Incorporating the foregoing facts and law, Plaintiff's general allegations that these Defendants bore any role in the hiring, training, supervision or "selection" of Cruz by Monique Trucking are also unfounded and therefore subject to dismissal because, put simply, Defendants Intsel and Triple-S merely purchased the steel from Searing and had no role in the delivery of the

13

product. That delivery of steel was done at the direction of Searing and/or TQL, not Defendants Intsel or Triple-S, and that is evinced by the Bill of Lading referenced and included in Plaintiff's Complaint at para. 60. Therefore, those claims as to Defendants Intsel and Triple-S are also subject to dismissal because Plaintiff has not plausibly alleged any factual averments to support those claim(s). (See Compl., ¶¶ 29 – 30, 60; see also **Ex. 1**).

## II.  Plaintiff's claims for "Negligent Undertaking" are also subject to dismissal as they are inapplicable under the circumstances as a matter of law.

Per Restatement (Second) of Torts § 324(a), the elements of a cause of action for "negligent undertaking" are as follows:

> "One who <u>undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things</u>, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Restat. 2d of Torts § 324(a) (emphasis added).

Colorado adopted the foregoing cause of action in the seminal case of *De Caire v. Public Svc. Co.*, 479 P.2d 964, 967 (Colo. 1971). However, the cause of action, if any, is reserved for those unique "Good Samaritan" or "assumption of risk" cases where a third-party voluntarily undertakes actions to assist another in preservation of their safety. Upon consideration of those illustrations provided in the footnotes of the foregoing Restatement provision the Court will note that some affirmative, voluntary action is required to ascribe liability, most commonly in an in-person situation.

14

Here, Plaintiff's novel attempt to assert the claim is patently inapplicable and subject to dismissal given there is no factual basis to plausibly establish that any agent, representative or employees of Defendants Intsel or Triple-S undertook "[…] gratuitously or for consideration, to render services to another which [they] should recognize as necessary for the protection of a third person or his things […]", (*i.e.*, Mr. Miller). Restort. 2d of Torts Section 324(a). All they did was buy the steel and no agents, representatives or employees of Defendants Intsel or Triple-S were present during the loading and delivery of the materials prior to the Accident, nor were any present at the time it occurred (See *Deposition of Ignacio Cruz-Mendoza* (supra.)). Thus, they took no action, voluntarily or involuntarily, to provide any assistance or aid to Mr. Miller or any other motorist involved. Therefore, the novel claim as asserted here is subject to dismissal as a matter of law.

### III.   Joint Venture / Enterprise Claims.

Under Colorado law, because a joint venture and/or enterprise is a partnership formed for a limited purpose, the substantive law of partnership must be applied in determining whether a joint venture exists. See, e.g., *Batterman v. Wells Fargo Ag Credit Corp.*, 802 P.2d 1112, 1117 (Colo. App. 1990). "A joint venture exists when there is: (1) a joint interest in property; (2) an express or implied agreement to share in profits or losses of the venture; and (3) actions and conduct showing joint cooperation in the venture." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 619 (Colo. 1999) (quoting *City of Englewood v. Commercial Union Assur. Cos.*, 940 P.2d 948, 957 (Colo. App. 1996)).

Here, incorporating the facts and citations above, no agency relationship existed between Defendants Intsel or Triple-S and Cruz, or any other Defendant, because Cruz was not acting under

15

the control of either entity and was not acting on their behalf or behest as their agent, employee or representative. Rather, he was acting at the direction and under the control of his employer, Monique Trucking, and/or the Co-Defendants as his employer's brokers or vendors such as TQL or Searing. Plaintiff seeks to assign joint and several liability among the various Co-Defendants under the guise they were operating as a "single entity," but she has not raised any conclusory or specific allegations against either Intsel or Triple-S that would make such a relationship plausible. (See Compl. at ¶ 38). Even if such a relationship could exist *vis a vis* Monique Trucking or Cruz, it would be as an independent contractor as neither entity was able to control how Cruz completed the work he was specifically hired to do.

Second, these Defendants ordered the steel delivery through Searing which provided a Bill of Lading (see Compl. at ¶ 60) for the materials referenced in Plaintiff's Complaint. Until the materials were delivered, they were only promised; and, these Defendants had no ownership or control over the materials until that action was completed. Importantly, they also held no ownership interest in the tractor-trailer Cruz was operating at the time of the accident.

Third, Plaintiff fails to allege any factual basis that the Co-Defendants shared in any profits or losses relating to the delivery of steel to Intsel or Triple-S. Rather, like the common delivery of goods and services by third-parties, the agreement was only the delivery of steel materials. What these Defendants did with those materials and any profits or losses that may have resulted would have been theirs alone, not Cruz', Monique Trucking's or any other Co-Defendants'.

Lastly, because the work Cruz was doing was not an "inherently dangerous activity" per the preceding Sections, even if Cruz was an independent contractor, neither Intsel nor Triple-S could be held liable for any negligence on his part.

Based on the foregoing, Plaintiff has failed to state a claim under which relief may be granted, and her claims for joint enterprise and venture must be dismissed.

## CONCLUSION

In sum, Mr. Miller's death, while tragic, is not the result of any negligent acts or omissions on part of Defendants Intsel or Triple-S. They simply placed an order through a third-party broker, TQL, that was to be fulfilled by third-party supplier, Searing, which bore the responsibility to ensure the load of steel materials was secured properly before releasing Cruz to complete the delivery. Those parties coordinated with Monique Trucking for the delivery to be fulfilled by its employee, Cruz. At no point did Intsel or Triple-S bear control or a right to control his actions. They held no agency or employment relationship with him; and, until this Accident occurred, had no interactions with him related to their load, were not present for the loading of the materials, and were not present when he caused the subject Accident. While Monique Trucking may have since been dissolved following the Order, and Cruz deported to Mexico, those are not objectively valid reasons to presently hold these Defendants liable for Monique Trucking's or Cruz' negligence merely for the sake that Plaintiff suffered her alleged losses.

For the foregoing reasons and authorities cited herein, each of Plaintiff's claims against Defendants Intsel and Triple-S are subject to dismissal as a matter of law for failing to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

**WHEREFORE,** having provided the grounds for their requested relief, Defendants Intsel and Triple-S respectfully request that each and all of Plaintiff's claims against them be dismissed, with

prejudice, and that they be awarded their respective costs and fees in defending this action and for such other relief as the Court may deem just and proper.

Respectfully submitted this 27th day of October, 2025.

JACHIMIAK PETERSON KUMMER, LLC

 /s/ *Mark J. Jachimiak*
Mark J. Jachimiak, No. 30044
Brandon O. Hawkins, No. 49069
Jachimiak Peterson Kummer,
860 Tabor Street, Suite 200
Lakewood, CO  80401
Phone:  303.863.7700
Fax: (303) 830-8772
Email:  mark@jpk.law
*Attorneys for Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.*

# CERTIFICATE OF SERVICE

   I hereby certify that on this 27th day of October, 2025, I electronically filed the foregoing **DEFENDANTS INTSEL STEEL WEST LLC'S AND TRIPLE-S STEEL HOLDINGS, INC.'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Dan J. Caplis
Babar Waheed
Cajardo Lindsey
The Dan Caplis Law Firm LLC
6400 S. Fiddlers Green Circle, Suite 220
Greenwood Village, CO 80111

Kevin G. Ripplinger
Bryan K. Patterson
Patterson Ripplinger, P.C.
5613 DTC Parkway, Suite 400
Greenwood Village, CO 80111

Brittney A. Vig
Christopher D. Yvars
Wilson, Elser Moskowitz Edelman & Dicker LLP
1225 17th Street, Suite 1700
Denver, CO 80202

               /s *Kim Hughes*
               Kim Hughes, Paralegal