IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00997-TPO

DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased,

      Plaintiff,

v.

MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC;
TOTAL QUALITY LOGISTICS, LLC;
INTSEL STEEL WEST LLC;
TRIPLE-S STEEL HOLDINGS, INC.;
SEARING INDUSTRIES, INC.; and
IGNACIO CRUZ-MENDOZA;

      Defendants.

---

**DEFENDANT TOTAL QUALITY LOGISTICS, LLC'S FED. R. CIV. P. 12(b)(6)
MOTION TO DISMISS AMENDED COMPLAINT**

---

Pursuant to the preemption doctrine of 49 U.S.C. § 14501(c)(1) and Federal Rule of Civil Procedure 12(b)(6), Defendant Total Quality Logistics, LLC ("TQL"), moves to dismiss Plaintiff's Amended Complaint.

## I.    <u>INTRODUCTION</u>

This case arises from a June 11, 2024 motor vehicle accident ("Accident") on U.S. Highway 285 involving an 18-wheel tractor-trailer truck ("Tractor Trailer") driven by Defendant Ignacio Cruz-Mendoza ("Cruz-Mendoza"). Plaintiff is the surviving spouse of decedent Scott Miller, who sustained fatal injuries in the Accident. At the time of the Accident, Cruz-Mendoza was acting as an agent and employee of Manrique Agramon d/b/a Monique Trucking LLC ("Monique Trucking"), who was retained to transport an interstate shipment of steel goods ("Steel Load") from Searing Industries, Inc.'s ("Searing") facility in Wyoming to the consignee, Intsel Steel West LLC ("Intsel"). TQL was the <u>broker</u> for the Steel Load.

Plaintiff's 236-paragraph Amended Complaint should be dismissed in full as to TQL for at least three independent reasons. ***First***, the Amended Complaint relies almost entirely on undifferentiated allegations against "Defendants," without specifying which of the six distinct defendants engaged in which conduct. This improper "group pleading" violates Federal Rule of Civil Procedure 8(a), which requires a short and plain statement of the claim showing the pleader is entitled to relief. Rule 8 demands that each defendant be given far notice of the claims asserted against it and the factual basis for those claims. Plaintiff's failure to distinguish among the Defendants deprives TQL of the notice to which it is entitled. The lack of individualized allegations is especially problematic in this case given Plaintiff's apparent strategy of naming "everyone and anyone" remotely connected to the Accident, and then lumping them all as "Defendants" despite

their distinct roles. The Amended Complaint contains no specific, individualized, factual allegations identifying what TQL allegedly did to give rise to liability. Instead, Plaintiff lumps TQL together with unrelated parties, offering only vague and conclusory assertions.

*Second*, setting aside the threshold pleading defects, Plaintiff's claims against TQL should also be dismissed because they are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1), which preempts common law tort claims related to a <u>freight broker's</u> hiring or retention of a carrier to perform shipments in interstate commerce. Plaintiff alleges TQL was the broker responsible for arranging transportation of the Steel Load. Under well-established precedent, claims challenging a broker's decision to hire or retain a carrier – whether framed as negligence, negligent hiring, or otherwise – fall squarely within the scope of FAAAA preemption. Accordingly, each of her negligence claims should be dismissed as preempted by the FAAAA.

*Third*, Plaintiff's claims should also be dismissed as against TQL because Plaintiff has not – and cannot – plead the elements of her claims. First, Plaintiff's "negligent undertaking" claim fails because Plaintiff does not allege TQL assumed any duty except for an existing contractual obligation, which is legally insufficient. Second, Plaintiff's claims premised on vicarious liability fail because the Amended Complaint is devoid of facts to establish the special relationship required to impose vicarious liability. Third, Plaintiff's joint venture and joint enterprise theories are unsupported by facts showing actual right to control the Tractor Trailer. Fourth, Plaintiff's wrongful death claim is derivative, and must be dismissed because it depends on the viability of underlying tort claims, which are themselves deficient and subject to dismissal.

TQL requests the Court dismiss all claims against it with prejudice.

2

## II.    **FACTUAL BACKGROUND**

Monique Trucking, LLC, a California motor carrier, hired Cruz-Mendoza to drive its Tractor Trailer.[1] (Am. Compl. ¶ 139, 141(b).) Cruz-Mendoza arrived at Searing Industries, Inc. ("Searing") in Cheyenne, Wyoming on June 11, 2024, where he and Searing's agents loaded and secured the steel shipment. Cruz-Mendoza then departed to deliver the load to Intsel Steel West LLC ("Intsel"), the consignee, or its alleged common owner, Triple-S Steel Holdings, Inc. ("Triple-S")). (*Id.* ¶¶ 19, 31, 74.) TQL was the broker for the Steel Load. (*Id.* ¶¶ 13, 62.)

The Amended Complaint includes **four allegations specific to TQL**: (1) TQL is an Ohio limited liability company with its principal place of business in Cincinnati, Ohio (*id.* ¶ 11); (2) TQL's USDOT number is listed as 2223295 (*id.* ¶ 12); (3) TQL is a broker (*id.* ¶ 13); and (4) TQL was the broker for the Steel Load (*id.* ¶ 62). The Amended Complaint also asserts claims against other individuals and entities allegedly connected to the Accident in the following ways:

- **Motor Carrier**: Monique Trucking, a California limited liability company, conducted freight transportation activities within Jefferson County , Colorado. (*Id.* ¶¶ 4, 10.)

- **Broker**: TQL, an Ohio limited liability company, is a broker and the broker for the Steel Load. (*Id.* ¶¶ 11, 13, 62.)

- **Consignee**: Intsel, a Delaware limited liability company, was the consignee on the bill of lading for the Steel Load. (*Id.* ¶¶ 14, 31.) Triple-S, a Virginia limited liability company, allegedly has common ownership with Intsel, and was the alleged intended recipient of the Steel Load. (*Id.* ¶¶ 17, 20, 32–33.)

- **Steel Seller**: Searing, a California company, has a facility in Cheyenne, Wyoming, where the Steel Load was picked up and loaded on the Tractor Trailer. (*Id.* ¶¶ 21, 60, 63–75.)

---

[1] Plaintiff filed a Complaint on January 2, 2025 in Jefferson County District Court against Defendants Monique Trucking LLC and Ignacio Cruz-Mendoza. On March 27, 2025, Defendant Monique Trucking LLC removed the case to the United States District Court for the District of Colorado. [ECF 1.] On August 13, 2025, Plaintiff filed an Amended Complaint, adding TQL, Intsel Steel West LLC, Triple-S Steel Holdings, Inc., and Searing Industries, Inc. as defendants. [ECF 32.]

- **Driver**: Cruz-Mendoza, an individual, was the <u>driver of the Tractor Trailer</u>. (*Id.* ¶¶ 23, 30, 32–33, 36, 39.)

Although these Defendants each have distinct and differing alleged connections to the Accident, Plaintiff lumps TQL in with them (*id.* ¶ 24) and proceeds to assert generalized allegations against "Defendants" collectively. (*See, e.g.*, *id.* at 25–30, 34, 36–45, 47–48, 50, 76, 87–90, 93, 98–100, 102–105, 108, 112, 117, 119–120, 123, 125, 127–129, 145, 147, 149–152, 203–212, 214, 217–233, 235.) For example, Plaintiff alleges <u>all six Defendants</u>:

- "[O]wned, leased, assigned, and/or operated" the Tractor Trailer (*id.* ¶ 30);

- "[E]mployed and/or contracted" with Cruz-Mendoza (*id.* ¶ 37–38);

- "[A]cted as a single entity and operated and conducted business as a single entity for transporting goods in interstate commerce" (*id.* ¶ 39); and

- "[W]ere or should have been authorized interstate motor carriers" (*id.* ¶ 25).

Against TQL specifically, Plaintiff asserts seven different claims for relief – (1) wrongful death; (2) negligence; (3) negligent hiring of Cruz-Mendoza; (4) negligent hiring of Monique Trucking; (5) negligent undertaking; (6) joint venture; and (7) joint enterprise liability. None of these claims is supported by specific factual allegations identifying what TQL allegedly did to give rise to liability.

### III.   <u>LEGAL STANDARD</u>

Fed. R. Civ. P. 8(a)(2) requires a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]o state a claim in federal court, a complaint must explain what *each defendant* did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant

violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (emphasis added). "Group pleading" – collective allegations against individual defendants – "violates Rule 8 when a plaintiff fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants." *Carrado v. Daimler AG*, No. 17-cv-3080-WJM-SKC, 2018 WL 4565562, at *3 (D. Colo. Sept. 24, 2018); *Del Castillo v. Estate of Fehd*, No. 1:24-cv-02199-SKC-TPO, 2025 WL 1207584, at *2 (D. Colo. Apr. 25, 2025); *Mao, Inc. v. Penn Enter., Inc.*, No. 1:23-cv-02736-SKC-KAS, 2025 WL 1993702, at *2 (D. Colo. July 17, 2025); *Pinto-Rios v. Brown*, No. 20-CV-3698-RMR-JPO, 2024 WL 1257518, at *7 (D. Colo. Mar. 25, 2024).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a "complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Dismissal is appropriate under Rule 12(b)(6) "on the basis of an affirmative defense like preemption when the law compels that result." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015).

## IV.    ARGUMENT

### A.    The Court Should Dismiss Plaintiff's Amended Complaint as to TQL Because There Are No Allegations to Support Claims Against TQL.

The Amended Complaint should be dismissed in its entirety as to TQL because Plaintiff wholly fails to allege specific misconduct attributable to TQL. Instead, her claims are plead against

5

"Defendants" collectively, depriving TQL of fair notice of the claims alleged against it.

The Tenth Circuit has made clear that "[i]t is particularly important … that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Group pleading fails this standard. *See, e.g.*, *Carrado*, 2018 WL 4565562, at *3 ("Group pleading violates Rule 8 when a plaintiff fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants."); *Pinto-Rios*, 2024 WL 1257518, at *7 ("Plaintiff's reliance on group pleading requires the Court to speculate concerning which Defendants are charged with what specific conduct. The Court declines to do so.").

Here, Plaintiff asserts seven separate claims against TQL but fails to allege any specific conduct by TQL to support her claims. Instead, her allegations are internally inconsistent and facially implausible. For instance, she alleges all Defendants, jointly owned, operated, and controlled the Tractor Trailer, jointly employed Cruz-Mendoza, acted as a single entity and "were or should have been authorized interstate motor carriers." (Am. Compl. ¶¶ 25, 30, 37, 39.) But elsewhere, Plaintiff alleges these Defendants were, separately a motor carrier, broker, consignee, seller, and driver. And as to TQL specifically, Plaintiff pleads that TQL is a broker and included a screenshot from the Federal Motor Carrier Safety Administration's ("FMCSA") database. (*Id.* ¶ 13.) This internal inconsistency is not just confusing, it is legally significant.

Under federal law, brokers and motor carriers are mutually exclusive roles. The FAAAA defines a broker as "a person, other than a motor carrier … , that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. §

13102(2) (emphasis added). A company cannot wear both hats for the same shipment. *See, e.g.*, *Hodge v. Molson Coors Bev. Co. USA, LLC*, No. 1:24-cv-04735-SDG, 2025 WL 2525860, at *2 (N.D. Ga. July 29, 2025) (the "role of 'broker' under the Act is—by statutory definition—to arrange for the transportation of goods *by someone else*.").[2] TQL's status as a freight broker carries special legal significant here because, for reasons discussed in Section B below, federal law broadly preempts negligence claims against freight brokers. The Amended Complaint recognizes TQL's specific role as is relates to the Accident (*i.e.*, as broker), but the reminder of Plaintiff's allegations intentionally obscure that significant fact. In doing so, Plaintiff lumps TQL in with all other Defendants alleging misconduct for which TQL *cannot* be liable.

Plaintiff's group pleading should not be excused as a preliminary or placeholder effort. This is already an *amended* pleading, and Plaintiff has already conducted some discovery – incorporating deposition testimony from Cruz-Mendoza. Plaintiff is clearly aware that Defendants played distinct roles. (*See, e.g.*, Am. Compl. ¶ 39 ("Cruz-Mendoza was driving…"); ¶¶ 63–67 (a Searing agent assisted Cruz-Mendoza in loading the Tractor Trailer).) This is not a case where Plaintiff lacks information to properly differentiate the parties; this is a case where Plaintiff deliberately obscures the wrongdoing of each Defendants, and  sidesteps the requirement to plead individualized conduct with the goal of manufacturing collective liability on her "joint venture" and "joint enterprise liability" claims which otherwise lack factual foundation. The inconsistency underscores the lack of a coherent theory of liability and renders the entire pleading defective. The

---

[2] *See also, e.g.*, *Morales v. OK Trans, Inc.*, No. 2:19-CV-00094, 2024 WL 1348405 at *2 (S.D. Tex. Mar. 29, 2024) (citing *Tryg Ins. V. C.H. Robinson Worldwide, Inc.*, 767 Fed. App'x 284, 286–87 (3d Cir. 2019)) (stating that a company can only wear one "proverbial hat" regarding a particular shipment).

Amended Complaint fails to meet the pleading standards under *Twombly*, *Iqbal*, and Rule 8, and should be dismissed under Rule 12(b)(6). *See Robbins*, 519 F.3d at 1250.

> **B.**    **Plaintiff's Claims Against TQL Should be Dismissed Because They are Preempted by the Federal Aviation Administration Authorization Act.**

Plaintiff's seven tort claims against TQL fail and should be dismissed for a separate, independent reason: the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1) preempts these state tort claims against a freight broker, and they are not saved by any applicable safety exception.

> 1.    Plaintiff's state law claims against TQL must be dismissed because the FAAAA preempts all state common law tort claims against freight brokers.

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010) ("[I]t has long been recognized that federal law preempts contrary state enactments.") (citing *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405–06 (1819)). In 1994, Congress enacted the FAAAA to solve the "huge problem" of differing state rules for national and regional carriers. *See* H.R. Conf. Rep. No. 677, 103d Cong., 2d Sess. 87 (1994). The FAAAA expressly prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law relating to a price, route, *or service* of *any motor carrier* … or … *broker*." 49 U.S.C. § 14501(c)(1) (emphasis added). The Supreme Court has interpreted this language broadly, explaining that the statute aims to ensure that "rates, routes, and services" in the transportation industry reflect "maximum reliance on competitive forces." *Rowe v. New Hampshire Motor Transport Assn.*, 552 U.S. 364, 370–71 (2008) (citation omitted). Section 14501(c)(1) is thus broad and preempts state laws that have a "connection with" or

"reference to" the prices, routes, or services of a motor carrier or broker. *Id.* at 370 (citation omitted) (emphasis removed); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (The words "relating to" "express a broad pre-emptive purpose."). Even indirect connections to a broker's services are preempted if they have a "significant impact" on the FAAAA's "deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 371.

The FAAAA "bar[s] states from regulating freight forwarders/brokers and motor carriers of property …" *Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250, 254 (D.N.J. 2016). Claims applying a negligence standard would impermissibly "regulate brokers, not 'in their capacity as members of the public,' but in the performance of their core transportation-related services," which the FAAAA expressly preempts. *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268 (11th Cir. 2023) (quoting *Rowe*, 552 U.S. at 375). The Seventh Circuit's decision in *Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 459 (7th Cir. 2023), *cert. denied*, 144 S.Ct. 564 (2024), is particularly instructive. There, the court explained that imposing a negligence standard on brokers would have a significant economic effect on their services:

> By recognizing common-law negligence claims, courts would impose in the name of state law a new and clear duty of care on brokers, the breach of which would result in a monetary judgment. This is exactly what [plaintiff] seeks here against [defendant broker]. To avoid these costly damages payouts, [defendant broker] and other brokers would change how they conduct their services—for instance, by incurring new costs to evaluate motor carriers. Then, by changing their hiring processes, brokers would likely hire different motor carriers than they would have otherwise hired without the state negligence standards. Indeed, that is the centerpiece of [plaintiff's] claim: that [defendant broker] should not have hired [the motor carrier].

74 F.4th 453, 459 (7th Cir. 2023), *cert. denied*, 144 S.Ct. 564 (2024). The majority of courts that have considered this issue have applied the FAAAA's express preemption to bar common law negligence claims against freight brokers.

9

Here, Plaintiff alleges TQL is a broker.[3] (Am. Compl. ¶¶ 13 ("According to the [Federal Motor Carrier Safety Administration ("FCMSA")], TQL is a broker."); 62 ("The broker for the subject load was TQL.").) Accordingly, Plaintiff's seven tort claims against TQL are preempted by the FAAA and should be dismissed. While Plaintiff attempts to repackage all of these tort claims under various legal theories, each one ultimately challenges TQL's selection of Monique Trucking to transport the Steel Load. This is precisely the type of conduct courts have found to be core broker activity and therefore preempted. As explained in *Aspen*, applying a negligence standard to broker conduct "would regulate brokers, not 'in their capacity as members of the public,' but in the performance of their core transportation-related services." *Aspen*, 65 F.4th at 1268 (quoting *Rowe*, 552 U.S. at 375). Because Plaintiff's claims seek to impose liability on TQL for its alleged negligence in performing its broker services, they are expressly preempted by the FAAAA.

      2.     The "safety exception" does not apply to save Plaintiff's claims from the FAAAA's broad, express preemption over state transportation regulations.

Plaintiff's claims against TQL are preempted by the FAAAA unless an express exception applies. The only potentially relevant exception – the "safety exception" – does not apply here.

Congress created certain exceptions to the FAAAA's otherwise broad preemption over transportation-related regulations. As relevant here, the "safety exception" limits the preemptive effect for "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(2)(A). While the Tenth Circuit has not addressed this issue, both the Eleventh and Seventh Circuit Courts of Appeals have held that the FAAAA preempts state law claims for negligent hiring

---

[3] As noted in Section IV.A, The FAAAA defines a broker as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

or retention of a motor carrier by a broker. *Aspen*, 65 F.4th 1261; *Ye*, 74 F.4th 453. At least one court in the District of Colorado has adopted the *Aspen* and *Ye* rationale, concluding that common law negligence claims against a freight broker based merely on the broker's selection of a motor carrier do not trigger the safety exception, meaning that FAAAA preemption applies in those circumstances.[4] *Trujillo v. Nucor Corp.*, No. 1:23-CV-00802-RM-SBP, 2025 WL 1251192, at *3 (D. Colo. Jan. 2, 2025) (R&R adopted by *Trujillo v. Moore Bros., Inc.*, 2025 WL 1250928 (D. Colo. Mar. 24, 2025) (Moore, J.)).[5]

In *Trujillo*, the District of Colorado considered a nearly identical set of facts to the case at bar. There, the plaintiffs asserted a negligent hiring claim against a steel manufacturer, Nucor Corporation (and related Nucor entities), based on Nucor's selection of Moore Brothers, Inc. to

---

[4] Total Quality Logistics, LLC, filed a Petition for Writ of Certiorari on August 4, 2025 for the matter *Total Quality Logistics, LLC v. Robert Cox*, 142 F.4th 847 (6th Cir. 2025), requesting the United States Supreme Court resolve the issue of "[w]hether a common-law negligence claim alleged against a freight broker, based on the broker's selection of a motor carrier to provide transportation of cargo, is preempted because it does not fall within the safety exception in Section 14501(c)(2)(A)" of the FAAAA. On October 3, 2025, the Supreme Court granted a Petition for Writ of Certiorari in a similar matter, *Montgomery v. Caribe Transport II, LLC*, 124 F.4th 1053 (7th Cir. 2025), which asks the Supreme Court to resolve the following question: "Does § 14501(c) preempt a state common-law claim against a broker for negligently selecting a motor carrier or driver?"

[5] The majority of courts around the country have too. *See, e.g.*, *Gauthier v. Hard to Stop LLC*, No. 22-10774, 2024 WL 3338944, at *1 (11th Cir. July 9, 2024) (plaintiff's negligent selection claim against Total Quality Logistics was foreclosed precedent and "her claim 'against a broker' was 'necessarily one step removed from a motor vehicle,' [] and thus not preserved from preemption" by the safety exception) (quoting *Aspen*, 65 F.4th at 1272); *Creagan v. Wal-Mart Transportation, LLC*, 354 F. Supp. 3d 808, 814 (N.D. Ohio 2018) ("Because the negligent hiring claim seeks to impose a duty on the service of the broker rather than regulate motor vehicles, I conclude this claim is not within the safety regulatory authority of the state and the exception does not apply."); *Volkova v. C.H. Robinson Co.*, No. 16 C 1883, 2018 WL 741441, at *3 (N.D. Ill. Feb. 7, 2018) (dismissing negligent hiring claim "because enforcement of the claim would have a significant economic impact on the services [the freight broker] provides, it is preempted" and noting "no convincing authority supporting the proposition that a state common law claim for negligent hiring constitutes a safety regulation").

transport steel products to customers. *Id.* at *1. Moore Brothers, in turn, subcontracted some of the work to Falcon Express, LLC, who employed George Myers. Myers was driving a truck owned by Falcon Express when he failed to stop at a red light and rear-ended a vehicle occupied by the plaintiffs. Nucor moved to dismiss the negligent hiring claim because it was preempted by the FAAAA and the Interstate Commerce Commission Termination Act ("ICCTA").

In siding with the Seventh and Eleventh Circuits, the District of Colorado rejected the Ninth Circuit's rationale in *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020), finding that "the general trend of authority among district courts overwhelmingly follows the *Ye/Aspen* line of cases, deeming negligent hiring claims asserted against brokers to be preempted by the FAAAA and not salvaged by the application of the safety exception." *Trujillo*, 2025 WL 1251192, at *4 (R&R adopted by *Trujillo*, 2025 WL 1250928 ).

In her R&R, Magistrate Judge Prose concluded:

> This court agrees with the majority that *Ye* and *Aspen* provide the correct approach for addressing negligent hiring claims asserted against freight brokers. Assuming, without necessarily finding, that common-law negligent hiring claims are state "regulations" under 49 U.S.C. § 14501(c)(1) and are matters which concern "safety" for purposes of 49 U.S.C. § 14501(c)(2)(A), the court finds that they are not regulations "with respect to motor vehicles." The court adopts the reasoning articulated in *Ye* and *Aspen*, and the many other courts that have embraced that reasoning, in rejecting *Miller*'s "indirect connection" test. Like those many courts, this court finds that negligent hiring claims against freight brokers do not present the direct connection to state regulation of motor vehicles that is necessary to invoke the safety exception of 49 U.S.C. § 14501(c)(2)(A) and avoid the preemptive effect of 49 U.S.C. § 14501(c)(1). Accordingly, the court **RECOMMENDS** that the negligent-hiring claim against Nucor (Plaintiffs' Eighth Cause of Action) be **DISMISSED**.

*Id.* (emphasis in original). Judge Moore adopted Magistrate Judge Prose's R&R and dismissed all claims against the Nucor defendants with prejudice. *Trujillo*, 2025 WL 1250928 at *1. The Court discerned "no principled basis for distinguishing between state tort law generally (or a negligent

hiring claim specifically) and any other 'law, regulation, or other provision having the force and effect of law' for purposes of FAAAA preemption." *Id.* at *3. The Court agreed with the *Ye* and *Aspen* rationale because they "provide[] an appropriate limiting principle to the safety exception that is rooted in the language of the FAAAA itself." *Id.*[6]

The same result should be reached here. Just as in *Nucor*, TQL's alleged selection or brokering of a motor carrier for transportation of the Steel Load is not connected to motor vehicle safety; any tenuous connection is insufficient to avoid the express preemption in the FAAAA.

### C. Plaintiff's Claims Against TQL Should Be Dismissed for Other Independent Reasons.

*First*, the only claim specifically pleaded against TQL – "negligent undertaking" – is insufficiently pled. Under Colorado law, "negligent undertaking" – i.e., "a claim for negligently performing an assumed undertaking" – is "distinct from a typical negligence claim." *Getzel v. ATS Specialized, Inc.*, No. 1:21-cv-02836-DDD-NRN, 2024 WL 446038, at *5 (D. Colo. Jan. 19, 2024) ("The "assumed duty" or "good Samaritan" doctrine holds that, in certain circumstances, a person can undertake a duty to a third party which he would not otherwise bear, and if he performs that duty negligently, he may be held liable."). Plaintiff's allegations are both conclusory and do not support these elements. First, she alleges TQL "had a **contractual** obligation to efficiently and safely transport goods in interstate commerce …" (Am. Compl. ¶ 156[7]), not an *independently assumed* obligation. And her other allegations are too conclusory to support the claim. (*Id.* ¶¶ 157–

---

[6] Like the R&R, the Court rejected the Ninth Circuit's rationale from *Miller* as "threaten[ing] to let the exception all but swallow the rule by allowing any law or regulation to any degree loosely connected with motor vehicle safety to avoid preemption." 2025 WL 1250928 at *3.

[7] Plaintiff does not allege who TQL owed this contractual duty (*see generally* Am. Compl.), leaving TQL and the Court to guess to whom TQL may have owed a contractual obligation.

158) (TQL "undertook, for consideration, a duty to render these [contractual] services" and "assumed an obligation to render transportation of goods in interstate commerce." Plaintiff's own allegations require dismissal of this claim.

Second, Plaintiff's claims sounding in vicarious liability should be dismissed because Plaintiff cannot plead facts to support vicarious liability against TQL for the negligence of the Cruz-Mendoza. *See, e.g.*, *DeClements v. RE/MAX LLC*, No. 1:20-cv-02075-DDD-SKC, 2020 WL 9259326, at *3-4 (D. Colo. Oct. 13, 2020). Plaintiff alleges only generally that TQL is vicariously liable for Cruz-Mendoza's negligence and recklessness (*see, e.g.*, Am. Compl. ¶¶ 37, 119), but there are *no facts* in the to establish that TQL employed Cruz-Mendoza or otherwise had a special principal-agent relationship. (*See generally id.*) At best, Plaintiff alleges "Defendants held out Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant, and/or employee of Defendants" (Am. Compl. ¶¶ 212, 226), but again, there are no facts to establish what TQL did, specifically, to generate such conclusion. The absence of specific factual allegations to support vicarious liability requires dismissal of all the claims premised on vicarious liability.

Third, Plaintiff's "joint venture" and "joint enterprise liability" claims both fail because there are no allegations that TQL has a right to control the operation of the Tractor-Trailer. "In order for a joint venture or joint enterprise in the operation of an automobile to exist, two or more persons must unite in pursuit of a common purpose, and each person must have a right to control the operation of the automobile in question." *Bilsten v. Porter*, 516 P.2d 656, 658 (Colo. App.

1973).[8] Here, Plaintiff alleges, in conclusory fashion, that "Defendants had the right to control Mr. Cruz-Mendoza" in the performance of the transport of goods and materials. (Am. Compl. ¶¶ 210, 224.) The alleged "control" occurred through payment for services and allowances for fuel costs, as well as being "in contract through numerous means of communication, including … email, faxes, telephones, and mobile applications to track the status of shipment from origin to delivery." (*Id.* ¶¶ 204–205, 218–219.) On its face, these allegations are insufficient to establish that TQL had a "right to <u>control the operation</u> of the automobile in question." *Bilsten*, 516 P.2d at 658. At best, these allegations suggest Defendants had the ability to contact the Tractor Trailer and track its progress en route – these are not allegation about control. The allegations simply do not support a claim for "joint venture" or "joint enterprise liability."

Fourth, Plaintiff's "wrongful death" claim should be dismissed because it is a derivative claim that requires an underlying tort. *See Steedle v. Sereff*, 167 P.3d 135, 140 (Colo. 2007) (a "wrongful death" claim "does not arise from a separate tort, but instead is wholly derivative of the injury to the decedent."). Because Plaintiff's underlying tort claims should be dismissed (*see supra* Sections IV.A and B), so too should the wrongful death claim. *See, e.g.*, *A.B. by Ybarra v. City of Woodland Park*, No. 14-cv-00151-RM-KMT, 2016 WL 1237195, at *6 (D. Colo. Mar. 29, 2016) (dismissing wrongful death claim where underlying tort claims failed as a matter of law).

## V.   <u>CONCLUSION</u>

Defendant Total Quality Logistics, LLC requests that all claims by Plaintiff against it be dismissed with prejudice.

---

[8] *See also Am. Fam. Mut. Ins. Co. v. AN/CF Acquisition Corp.*, 361 P.3d 1098, 1099 (Colo. App. 2015).

DATED: November 10, 2025

TAFT STETTINIUS & HOLLISTER LLP

*s/ Allison R. Burke*
Allison Burke, (#54916 )
Theodore J. O'Brien, (#61623)
675 Fifteenth Street, Suite 2300
Denver, CO 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
Email: aburke@taftlaw.com
         tobrien@taftlaw.com

*Attorneys for Defendant Total Quality Logistics LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2025, a true and correct copy of the foregoing **MOTION TO DISMISS** was filed with the Clerk of the Court using the CM/ECF and a true and correct copy of the foregoing was served on all counsel of record.


_s/Faith Brockman_
Faith Brockman, Legal Assistant