**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00997-TPO

DEANN MILLER, as surviving spouse of SCOTT MILLER, deceased,

    Plaintiff,

v.

MONIQUE TRUCKING LLC, a California Limited Liability Company, and
IGNACIO CRUZ-MENDOZA, an individual.

    Defendants.

---

## PLAINTIFF'S ANSWER TO DEFENDANTS INTSEL STEEL WEST LLC AND TRIPLE-S STEEL HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AS TO INTSEL STEEL WEST LLC AND TRIPLE-S STEEL HOLDINGS, INC.

AND NOW COME the Plaintiff, Deann Miller, by and through her legal counsel, Fellerman & Ciarimboli Law, P.C., responds in opposition to Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint as to Intsel Steel West LLC and Triple-S Steel Holdings, Inc. as follows:

**DENIED.** The allegations set forth in Defendants' Motion to Dismiss are conclusions of law to which no response is required. If any of these paragraphs are deemed factual in nature, they are hereby denied strict proof demanded at time of Trial. By way of further answer, and as set forth in Plaintiff's Brief in Opposition to

be filed and incorporated fully herein, Plaintiff respectfully asks this Honorable

Court Deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint as to

Intsel Steel West LLC and Triple-S Steel Holdings, Inc.

Respectfully submitted,

**FELLERMAN & CIARIMBOLI LAW, P.C.**

Edward J. Ciarimboli, Esquire
Corey S. Suda, Esquire
*Counsel for Plaintiff*

Date: May 1, 2026.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00997-TPO

DEANN MILLER, as surviving spouse of SCOTT MILLER, deceased,

     Plaintiff,

v.

MONIQUE TRUCKING LLC, a California Limited Liability Company, and
IGNACIO CRUZ-MENDOZA, an individual.

     Defendants.

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS INTSEL STEEL WEST LLC'S AND TRIPLE-S STEEL
HOLDINGS, INC.'S MOTION TO DISMISS**

AND NOW COME Plaintiff, DEANN MILLER, as surviving spouse of

SCOTT MILLER, deceased, ("Plaintiff") by and through her legal counsel,

Fellerman & Ciarimboli Law, P.C., hereby files this Brief in Opposition to the

Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.'s Motion to

Dismiss, and in support thereof avers as follows:

## I.    COUNTERSTATEMENT OF FACTS

This case arises from a motor vehicle accident occurred on Highway 285

near Conifer in Jefferson County, Colorado on June 11, 2024 ("the Crash"), that

resulted in the death of Deann Miller's husband, Mr. Scott Miller, due to the

negligence and recklessness of Defendant Ignacio Cruz-Mendoza ("Cruz"). *See*

Amended Complaint, ***Exhibit A***.

More specifically, on June 11, 2024, at some point before 11:00 a.m., Mr. Cruz-Mendoza arrived at the Searing facility in Cheyenne, Wyoming, to pick up and haul a load of steel piping bound for Intsel and/or Triple S in line with the terms of the Bill of Lading. *See* Deposition Testimony of Ignacio Cruz-Mendoza attached hereto as ***Exhibit B*** at 34; *see also* Bill of Lading, ***Exhibit C***.

Moving Defendant, Intsel Steel West ("Intsel") is a Delaware limited liability company with a principal place of business located at 8573 Ulster Street, Commerce City, Colorado 80022. Intsel's USDOT number is listed as 607017. Intsel's MC number is listed as MC-911190. Moving Defendant Triple-S Steel Holdings Inc. ("Triple-S") is a Virginia limited liability company with a principal place of business located at 2189 River Road, Grand Junction, Colorado 81505. Triple's USDOT number is listed as 691989. Upon information and belief, Triple acquired Intsel in 2004. *See* Amended Complaint, ***Exhibit A***, ¶ 14-19.

Mr. Cruz-Mendoza testified that he was sent to the Searing facility on June 11, 2024, by the broker for the load, TQL. *See **Exhibit B*** at 11. Upon arriving at the Searing facility, Mr. Cruz-Mendoza confirmed that an agent of Searing provided him with instructions to give to the forklift driver who was loading his trailer. *Id.* at 56

According to Mr. Cruz-Mendoza, these instructions contained information such as how many straps were needed to secure the load to the trailer. *Id*. at 54.

While at the Searing facility, Mr. Cruz-Mendoza helped the Searing agent load his trailer. *Id*. at 48. According to Mr. Cruz-Mendoza's account, he secured the load with tie-down straps as instructed by Searing, and Searing checked the tie-downs prior to allowing Mr. Cruz-Mendoza to exit the Searing facility. *Id*. at 49. Searing instructed Mr. Cruz-Mendoza on how many straps to use in securing the load. *Id*.

However, Searing and Mr. Cruz-Mendoza were in violation of FMCSA 393.106 regarding the requirements for securing cargo. Searing and Mr. Cruz-Mendoza failed to firmly immobilize and/or secure the steel beams in violation of FMCSA 393.106(b). Searing and Mr. Cruz-Mendoza failed to secure the cargo with chocks, wedges, or a cradle in violation of FMCSA 393.106(c) when strapping down the cargo. The aggregate working load limit for tie-downs must be at least one-half times the weight of the article or group of articles to be secured. *See* FMCSA 393.106(d). Searing and Mr. Cruz-Mendoza failed to ensure the aggregate working load limit of each tie-down to adequately and safely secure the cargo on June 11, 2024. In addition, Searing and Mr. Cruz-Mendoza failed to secure the cargo with the appropriate number of tie-down straps to ensure that the cargo would not shift or fall in transport in violation of FMCSA 393.110(e). *See* Amended Complaint, ***Exhibit A***, ¶ 60-83. Nevertheless, Searing security officers allowed Mr. Cruz-Mendoza to exit the Searing facility. *See **Exhibit B***, at 54

The actions and/or inactions of Searing and Mr. Cruz-Mendoza caused the cargo to leave the Searing facility unsecured and unsafe and increased the risk of harm to the motoring public, including Decedent Scott Miller. On June 11, 2024, at or around 5:00 p.m., Mr. Cruz-Mendoza was operating the Tractor Trailer owned, leased, and/or assigned by Defendants Southbound on Highway 285 ("HWY-285") near milepost 232, fully loaded with steel piping weighing approximately 127,000 pounds. On June 11, 2024, at or around 5:00 p.m., Decedent Scott Miller was operating his 2012 Ford F-350 ("Ford") Southbound on HWY-285 near milepost 232. Mr. Cruz-Mendoza began to pass the vehicle ahead of him on HWY 285 when he crashed the Tractor Trailer into the left side of the vehicle. Although he struck a vehicle, Mr. Cruz-Mendoza continued driving at a high rate of speed on HWY 285 and began passing the Ford operated by the Decedent. Upon passing the Decedent on the left, the load being hauled by Mr. Cruz-Mendoza began spilling onto the Decedent's Ford and the roadway. Mr. Cruz-Mendoza continued traveling at a high rate of speed before losing control of the Tractor Trailer, causing a chain collision involving five (5) vehicles on HWY 285. Upon information and belief, Mr. Cruz-Mendoza was operating the Tractor Trailer at nearly double the posted speed limit in the moments leading up to the crash. Decedent Scott Miller suffered catastrophic and fatal injuries, causing his death on June 11, 2024. *See* Amended Complaint, ***Exhibit A***, ¶ 60-83.

At all relevant times hereto, Defendants, TQL, Intsel, Triple-S, and Searing knew or should have known that Monique had an unsafe history in performing services as a motor carrier, including, but not limited to, the following[1]:

a. **Operating a commercial motor vehicle without a license in violation of FMCSA 383.23(a) – October 2022;**

b. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – October 2022;**

c. **Operating a commercial motor vehicle without the appropriate license in violation of FMCSA 391.11(b)(5) – November 2022**;

d. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2023;**

e. Failing to inspect and/or use emergency equipment in violation of FMCSA 392.8 – May 2023;

f. Failing to have retroreflective material affixed to trailer manufactured after December 1993 in violation of FMCSA 393.11RT – May 2023;

g. Inoperative and/or defective hazard warning lamp in violation of FMCSA 393.19 – May 2023;

h. Inoperative required lamp in violation of FMCSA 393.9 – May 2023;

i. No and/or insufficient warning devices in violation of FMCSA 393.95(f) – May 2023;

j. Inoperable headlamps in violation of FMCSA 393.9H – May 2023;

k. Inoperative turn signal in violation of FMCSA 393.9TS – May 2023;

l. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – August 2023;**

---

[1] The bolded violations resulted in the operator and/or Monique being placed out of service ("OOS").

m. Failure to have sufficient tie-downs to prevent forward movement for load in violation of FMCSA 393.110(b) – August 2023;

n. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2024**; and

o. **Operating in violation of FMCSA Operational Out of Service Order for Failure to Permit Safety Audit in violation of FMCSA 385.337(b) – May 2024.**

Upon information and belief, and at all relevant times hereto, Defendants knew or should have known that Monique did not have operating authority to transport cargo in interstate commerce at the time of booking the subject load carried by Mr. Cruz-Mendoza on June 11, 2024. *See* Amended Complaint, ***Exhibit A***, ¶ 89-109. Indeed, this is confirmed by the testimony of Mr. Cruz-Mendoza, who testified that he was not working for Monique in the month of May 2024 because Monique was "having trouble at the office." *See* Deposition Testimony of Mr. Cruz-Mendoza ***Exhibit B*** at 74-75.

Upon information and belief, at the time of the crash, Mr. Cruz-Mendoza was in violation of the FMCSR hours of service limits and consciously chose to operate the Tractor Trailer in a fatigued condition. Moreover, Defendants participated in, knew, or should have known that Mr. Cruz-Mendoza was operating over hours, driving while fatigued, and otherwise operating the Tractor Trailer in an unsafe, dangerous, and reckless condition in violation of the FMCSR and Colorado law. At all relevant times, upon information and belief, Defendants knew

or should have known that Mr. Cruz-Mendoza was not a legally licensed commercial motor operator. *See* Amended Complaint, ***Exhibit A***, ¶ 89-109.

Moreover, despite the deplorable safety record, incompetence, and dangerous behavior of Mr. Cruz-Mendoza, Defendants negligently, recklessly, and with conscious disregard for the safety of the motoring public operated, selected, hired, retained, and/or assigned him to deliver goods to its customers using tractors and trailers. At all relevant times, Defendants exercised complete control over the dispatching of the Tractor Trailer driven by Mr. Cruz-Mendoza at the time of the crash. At all relevant times, Defendants exercised complete control over the routing of the Tractor Trailer driven by Mr. Cruz-Mendoza at the time of the crash. At all relevant times, Defendants had the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Mr. Cruz-Mendoza should be considered an agent of Defendants. *See* Amended Complaint, ***Exhibit A***, ¶ 89-109.

As a result of the Crash, Mr. Cruz-Mendoza was charged with 18-3-106(1)(a) – Vehicular Homicide; 18-3-205(1)(a) – Vehicular Assault; 42-4-1401 (1) – Reckless Driving; and 42-2-404 (1) – Driving Commercial Vehicle (Not Qualified). *See **Exhibit A***, ¶ 84.

Thereafter, on October 27, 2025, Defendants, Intsel Steel West LLC and Triple-S Steel Holdings, Inc., filed this instant Motion to Dismiss each and all of

Plaintiff's claims against them with prejudice including the claims in Counts I, II, III, V, VII, VIII, X, and XI of Plaintiffs' Amended Complaint. As set forth below, Defendants' Motion must be denied.

## II.    QUESTIONS PRESENTED

A. Whether Plaintiff has adequately set forth her Negligence Claims and her Claims under Colorado's Wrongful Death Act against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.?

   Suggested Answer:   In the Affirmative.

B. Whether Plaintiff has adequately set forth her Negligent Hiring, Training, Supervision, and Selection Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.?

   Suggested Answer:   In the Affirmative.

C. Whether Plaintiff has adequately set forth her Negligent Undertaking Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.?

   Suggested Answer:   In the Affirmative.

D. Whether Plaintiff has adequately set forth her Joint Venture and/or Joint Enterprise Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.?

   Suggested Answer:   In the Affirmative.

## III.    LEGAL STANDARD

Under a Rule 12(b)(6) motion, a Complaint may not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt

that the plaintiff can prove no set of facts in support of [her] claim which could entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To survive a 12(b)(6) Motion to Dismiss, the Complaint must contain enough facts to state a claim to relief which is plausible on its face. Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). A plausible claim is a claim that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Complaint must accept the well-pleaded allegations of the Complaint as true and construe them in a light most favorable to the Plaintiff. Robbins v. Wilkie, 300 F.3d 1208, 1210 (10th Cir. 2002). As long as Plaintiff offers sufficient factual allegations such that the right to relief is raised beyond the speculative level, he has met the threshold pleading standard. Bryson v. Gonzalas, 534 F.3d 1282, 1286 (10th Cir. 2008).

IV.  **ARGUMENT**

A. **Plaintiff has adequately set forth her Negligence Claims and her Claims under Colorado's Wrongful Death Act against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.**

Counts I and II of Plaintiff's Amended Complaint contains adequate averments of material fact to establish a prima facie claim of Negligence and/or Claims under Colorado's Wrongful Death Act against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc. *See **Exhibit "A"*** at Counts I and II.

As Moving Defendants acknowledge, citing <u>Norton v. Gilman</u>, 949 P.2d 565, (Colo. 1997) ("Under the common law, the most important factor in determining whether a worker qualifies as an employee is the alleged employer's right to control the details of performance")). The main exception for this general rule is when the contractor is to perform inherently dangerous activities for the principal. *See* <u>Huddleston v. Union Rural Elec. Ass'n</u>, 841 P.2d 282, 287 (Colo. 1992). The Colorado Supreme Court has concluded that an activity will qualify as inherently dangerous when it (1) presents a special or peculiar danger to others that is inherent in the nature of the activity or the particular circumstances under which the activity is to be performed, that (2) is different in kind from the ordinary risks that commonly confront persons in the community, and (3) that the employer knows or should know is inherent in the nature of the activity or in the particular circumstances under which the activity is to be performed. Id.

Clearly, a fatigued Trucker driving while not properly licensed as discussed above would qualify as an inherently dangerous activity. Moreover, it was clearly averred that the negligence, carelessness, and/or recklessness of Defendants, as being vicariously liable for the actions of Mr. Cruz-Mendoza, consisted of, but are not limited to, the following:

    a.  Failing to maintain proper and adequate control of his Tractor Trailer;

    b.  Failing to keep his eyes on the road at all times;

c.  Failing to pay proper attention while operating his Tractor Trailer on HWY 285;

d.  Failing to take proper precautions in the operation of his Tractor Trailer so as to avoid the crash;

e.  Operating his Tractor Trailer in a negligent, careless, and reckless manner without due regard to the rights and safety of the Decedent;

f.  Failing to exercise due care and caution under all of the existing circumstances;

g.  Failing to have his Tractor Trailer under such control that it could be readily stopped, turned aside, or the speed thereof slackened upon the appearance of danger;

h.  Failing to remain alert;

i.  Operating his Tractor Trailer in a distracted manner;

j.  Consciously choosing to operate the Tractor Trailer without a valid commercial driver's license;

k.  Failing to properly and adequately secure the cargo to his trailer;

l.  Failing to reduce his speed in time to avoid crashing into traffic on HWY 285;

m.  Traveling at an excessive rate of speed under the circumstances;

n.  Violating the applicable rules, regulations, and laws pertaining to the safe and proper operation of motor vehicles and/or tractor-trailers;

o.  Failing to operate his Tractor Trailer in accordance with the Federal Motor Carrier Safety Regulations;

p.  Failing to properly control his Tractor Trailer in light of the circumstances then and there existing, including traffic patterns existing on the roadway;

q.  Failing to make necessary and reasonable observations while operating his Tractor Trailer;

r.  Failing to apply his brakes timely;

s.  Violating FMCSA Regulation 383 dealing with required knowledge and skills;

t.   Consciously choosing to drive at an unsafe speed given the circumstances;

u.   Consciously refusing to reduce speed in response to traffic patterns then and there existing on the roadway;

v.   Consciously choosing to disregard traffic patterns then and there existing on the roadway;

w.   Consciously choosing to drive distracted;

x.   Failing to perform a proper pre-trip inspection;

y.   Violating FMCSA Regulation 393.100 dealing with shifting and falling cargo;

z.   Violating both the written and unwritten policies, rules, guidelines, and regulations of Defendants;

aa.   Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

bb.   Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

cc.   Failing to ensure the parts and accessories of the Tractor Trailer were in good working order in violation of Section 392.7;

dd.   Failing to properly control his Tractor Trailer unit in light of the circumstances then and there existing on the roadway;

ee.   Failing to make necessary and reasonable observations while operating the Tractor Trailer;

ff.   Failing to take evasive action and/or failing to take appropriate and timely evasive action to avoid losing control of the Tractor Trailer;

gg.   Violating Sections 383.110; 383.111; and 383.113 dealing with required knowledge and skill;

hh.   Violating Section 395.1 concerning hours of service of drivers;

ii.   Making a conscious choice to drive in a fatigued condition, knowing that driving in a fatigued condition impairs perception and judgment;

jj.   Failing to adhere to the amount of driving hours limit;

kk. Causing the Crash due to being on the road for more than the regulated number of hours;

ll. Operating the Tractor Trailer in an unsafe condition in violation of Section 396.7;

mm.    Failing to inspect the Tractor Trailer before and during its operation in violation of Sections 396.9; 396.11; 396.13; and 396.17;

nn. Recklessly failing to keep proper braking distance between his Tractor Trailer and the vehicle Decedent was operating in violation of the Uniform Commercial Driver's Manual;

oo. Failing or consciously choosing not to follow the Uniform Commercial Driver's Manual as it relates to matching speed to road surface; and

pp. Acting with a conscious disregard for the rights and safety of others, including the Plaintiff.

It was further clearly averred that as a result of the negligent or reckless acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Scott Miller, suffered catastrophic, permanent, and fatal injuries and death, resulting in the entitlement to damages under the Wrongful Death Act and Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, hereby claims the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act. Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants' above mentioned reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203. *See* Amended Complaint, ***Exhibit A*** Counts I and II.

Contrary to Defendants' contentions, Plaintiff has alleged detailed factual averments in support of her Negligence Claims and/or Claims under Colorado's Wrongful Death Act against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc. and material issues of fact remain over employment status and control of the load warranting additional discovery. Because the Court must accept the truth of all factual allegations in the Amended Complaint and must draw all reasonable inferences in favor of the non-movant, there is no question that Plaintiff has adequately pled her Claims in Counts I and II of her Amended Complaint. Accordingly, Defendants' Motion must be denied.

**B. <u>Plaintiff has adequately set forth her Negligent Hiring, Training, Supervision, and Selection Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.</u>**

Counts III and V of Plaintiff's Amended Complaint contains adequate averments of material fact to establish a prima facie claim of Negligent Hiring, Training, Supervision, and Selection Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc. *See **Exhibit "A"*** at Count III.

A Defendant may be subject to liability for negligent hiring, training, supervision, and selection if they knew or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm. *See* <u>Trujillo v. Moore Brothers, Inc</u>., 2024 WL 1219701 (US Dist. Ct. Col. March 1, 2024). Here, it was clearly averred that the negligence, carelessness, and/or recklessness of

Defendants, in the hiring, supervision, retention and selection of Mr. Cruz-Mendoza, consisted of the following:

a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR;

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j. Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n. Failing to implement and/or enforce an effective safety system;

o. Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p. Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

r. Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s. Failing to monitor and/or regulate the actions of its drivers;

t. Failing to monitor and/or regulate the hours of its drivers;

u. Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v. Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w. Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x. Placing more emphasis on profits than on safety of its drivers and the motoring public;

y. Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z. Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm.    Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

*See* Amended Complaint, ***Exhibit A*** Count III

It was further clearly averred that Defendants knew or should have known that Monique had an unsafe history in performing services as a motor carrier, including, but not limited to:

a. Operating a commercial motor vehicle without a license in violation of FMCSA 383.23(a) – October 2022;

b. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – October 2022;

c. Operating a commercial motor vehicle without the appropriate license in violation of FMCSA 391.11(b)(5) – November 2022;

d. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2023;

e. Failing to inspect and/or use emergency equipment in violation of FMCSA 392.8 – May 2023;

f. Failing to have retroreflective material affixed to trailer manufactured after December 1993 in violation of FMCSA 393.11RT – May 2023;

g. Inoperative and/or defective hazard warning lamp in violation of FMCSA 393.19 – May 2023;

h. Inoperative required lamp in violation of FMCSA 393.9 – May 2023;

i. No and/or insufficient warning devices in violation of FMCSA 393.95(f) – May 2023;

j. Inoperable headlamps in violation of FMCSA 393.9H – May 2023;

k. Inoperative turn signal in violation of FMCSA 393.9TS – May 2023;

l. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – August 2023;

m. Failure to have sufficient tie-downs to prevent forward movement for load in violation of FMCSA 393.110(b) – August 2023;

n. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2024; and

o. Operating in violation of FMCSA Operational Out of Service Order for Failure to Permit Safety Audit in violation of FMCSA 385.337(b) – May 2024.

*See* Amended Complaint, ***Exhibit A*** Count V.

It was further clearly averred that the negligence, carelessness, and/or recklessness of Defendants, in the hiring, supervision, retention and selection of Monique as a carrier consisted of the following:

a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Monique;

b.  Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c.  Hiring and/or continuing to employ Monique even though it knew or should have known that their violation of the FMCSA hours of service made the company unfit to operate a commercial vehicle safely;

d.  Hiring and/or continuing to employ Monique even though the company had a propensity for driving violations;

e.  Hiring and/or continuing to employ Monique even though the company had a propensity for violating the "Rules of the Road" and FMCSR

f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Monique even though it knew or should have known that its propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Monique to carry its loads when it knew or should have known that the company was not properly qualified and/or trained;

j.  Allowing Monique to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm.    Failing to suspend, discipline, or provide remedial training to Monique prior to the Crash despite its history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

*See* Amended Complaint, ***Exhibit A*** Count V.

Contrary to Defendants' contentions, Plaintiff has alleged detailed factual averments in support of her Negligent Hiring, Training, Supervision, and Selection Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc. and material issues of fact remain over employment status and control of the load warranting additional discovery. Because the Court must accept the truth of all factual allegations in the Amended Complaint and must draw all reasonable inferences in favor of the non-movant, there is no question that Plaintiff has

adequately pled her Claims in Counts III and V of her Amended Complaint. Accordingly, Defendants' Motion must be denied.

### C. **Plaintiff has adequately set forth her Negligent Undertaking Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.**

Counts VII and VIII of Plaintiff's Amended Complaint contains adequate averments of material fact to establish a prima facie claim of Negligent Undertaking against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc. *See Exhibit "A"* at Count IV.

As Defendants acknowledge, a Defendant may be subject to liability for negligent undertaking as defined by the Restatement (Second) if they undertake, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." *See* Restat. 2d of Torts § 324(a) (emphasis added).

Here, it was clearly averred that Intsel undertook the performance of said duties and was negligent in its undertaking in the following ways:

a.  Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

b.  Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

d.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR;

f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r. Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s. Failing to monitor and/or regulate the actions of its drivers;

t. Failing to monitor and/or regulate the hours of its drivers;

u. Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v. Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w. Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x. Placing more emphasis on profits than on safety of its drivers and the motoring public;

y. Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z. Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

*See* Amended Complaint, ***Exhibit A*** Count VII.

It was further clearly averred that Triple-S undertook the performance of said duties and was negligent in its undertaking in the following ways:

a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

d. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR;

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j. Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n. Failing to implement and/or enforce an effective safety system;

o. Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p. Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r. Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s. Failing to monitor and/or regulate the actions of its drivers;

t. Failing to monitor and/or regulate the hours of its drivers;

u. Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.   Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.   Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.   Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.   Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.   Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa.  Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb.  Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc.  Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd.  Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee.  Failing to act upon and remedy known violations of industry standards;

ff.  Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg.  Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh.  Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii.  Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj.  Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk.  Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll.  Violating all applicable provisions of the FMCSA;

mm.    Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

*See* Amended Complaint, ***Exhibit A*** Count VIII.

Contrary to Defendants' contentions, Plaintiff has alleged detailed factual averments in support of her Negligent Undertaking Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc. and material issues of fact remain over employment status and control of the load warranting additional discovery. Because the Court must accept the truth of all factual allegations in the Amended Complaint and must draw all reasonable inferences in favor of the non-movant, there is no question that Plaintiff has adequately pled her Claims in Counts VII and VIII of her Amended Complaint. Accordingly, Defendants' Motion must be denied.

**D. Plaintiff has adequately set forth her Joint Venture and/or Joint Enterprise Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc.**

Counts X and XI of Plaintiff's Amended Complaint contains adequate averments of material fact to establish a prima facie claim of a Joint Venture and/or Enterprise amongst Manrique Agramon d/b/a Monique Trucking LLC, Total Quality

Logistics LLC, Intsel Steel West LLC, Triple-S Steel Holdings, Inc., Searing Industries, Inc. and Ignacio Cruz-Mendoza. *See **Exhibit "A"** * at Counts X and XI.

As Defendants acknowledge, a Defendant may be subject to liability under a joint venture if there is: (1) a joint interest in property; (2) an express or implied agreement to share in profits or losses of the venture; and (3) actions and conduct showing joint cooperation in the venture." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 619 (Colo. 1999) (quoting *City of Englewood v. Commercial Union Assur. Cos.*, 940 P.2d 948, 957 (Colo. App. 1996).

Furthermore, the Restatement (Second) of Torts defines a joint enterprise as 1) an agreement, express or implied, among the members of the group 2) a common purpose to be carried out by the group 3) a community of pecuniary interest in that purpose among the members and 4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *See* Restat. 2d of Torts § 491 comment *c* (emphasis added).

Here, it was clearly averred that the Defendants were engaged in a joint venture to haul goods and material in interstate commerce for profit. Mr. Cruz-Mendoza was paid by all Defendants for this transportation, including allowances for fuel costs. Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile applications to track the status of shipment from origin to delivery. As a result of the transportation,

Defendants earned, or intended to earn, a profit. Defendants controlled the Tractor Trailer through its duly authorized agent, servant, and/or employee, Mr. Cruz-Mendoza. Mr. Cruz-Mendoza was performing a service for the benefit of Defendants, namely the transportation of goods and material for profit. Mr. Cruz-Mendoza was transporting the goods and materials. Defendants had the right to control Mr. Cruz-Mendoza in performing this service. Defendants exercised this control over Mr. Cruz-Mendoza, <u>inter alia</u>, in the manner described fully herein. Defendants held out Mr. Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant, and/or employee of Defendants and it is vicariously liable for the acts and/or omissions of Mr. Cruz-Mendoza. As a direct and proximate cause of the above-stated acts and omissions, Plaintiff suffered, <u>inter alia</u>, the serious, severe, permanent, and fatal injuries as has been previously stated herein. *See* Amended Complaint, ***Exhibit A*** Count X.

It was further clearly averred that the Defendants were engaged in a joint enterprise to haul steel for profit. Mr. Cruz-Mendoza was paid by all Defendants for this transportation, including allowances for fuel costs. Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile applications to track the status of shipment from origin to delivery. As a result of the transportation of goods on the above-

referenced date, place, and time, Defendants earned or intended to earn a profit. Defendants controlled the Tractor Trailer through its fully authorized agent, servant, and/or employee, Mr. Cruz-Mendoza. On the above-referenced date, place and time, Mr. Cruz-Mendoza was performing a service for the benefit of Defendants, namely the transportation of goods in interstate commerce for profit. Defendants were aware that Mr. Cruz-Mendoza was transporting goods for profit. Defendants had the right to control Mr. Cruz-Mendoza in performing these services. Defendants exercised control over Mr. Cruz-Mendoza, <u>inter alia</u>, in the manner described fully herein. Defendants held out Mr. Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant, and/or employee of Defendants who are vicariously liable for the acts and/or omissions of Mr. Cruz-Mendoza. Defendants enjoyed unified administrative control as all Defendants participated in their full-service motor carrier, transportation and distribution activities to achieve their unified goal of transportation of goods to its final destination in a timely fashion for profit. Defendants enjoyed similar or supplementary business functions in their full-service motor carrier, transportation and distribution activities to achieve their unified goal of transportation of goods to its final destination in a timely fashion for profit. Defendants acted as affiliated or sister corporations possessing common ownership and/or an administrative nexus. Defendants also acted as a joint venture

and/or joint enterprise when operating their full-service motor carrier, transportation and distribution activities to achieve their unified goal of delivery of goods to its proper destination in a timely fashion for profit. Defendants shared and/or utilized the same address and/or building premises, equipment, vehicles, trailers, accountants, attorneys, insurance agents, officers, directors and/or employees. Defendants were responsible for operational management of Defendants' business and played an active role in the ongoing business activities of Defendants' business and had full authority to direct activities of Defendants' business. Defendants shared in the profits that were generated and leased and/or owned a common facility from which Defendants operated and shared equipment, office space, facilities, attorneys, accountants, and insurance agents. As a direct and proximate cause of the above-stated acts and omissions, Mr. Miller suffered, inter alia, the serious, severe, and permanent injuries stated herein. *See* Amended Complaint, ***Exhibit A*** Count XI.

Contrary to Defendants' contentions, Plaintiff has alleged detailed factual averments in support of her Joint Venture and/or Joint Enterprise Claims against Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc. and material issues of fact remain over employment status and control of the load warranting additional discovery. Moreover, this Joint Venture and/or Joint Enterprise was memorialized by the Bill of Lading attached hereto as ***Exhibit C***. Because the Court

must accept the truth of all factual allegations in the Amended Complaint and must draw all reasonable inferences in favor of the non-movant, there is no question that Plaintiff has adequately pled her Claims in Counts X and XI of her Amended Complaint. Accordingly, Defendants' Motion must be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint as to Defendants Intsel Steel West LLC and Triple-S Steel Holdings, Inc. Plaintiff respectfully submits the better course is to allow all claims and issues to remain for additional discovery and be decided by the trial Judge based on all discovery and information available and not just based on the pleadings.

Respectfully submitted,

**FELLERMAN & CIARIMBOLI LAW, P.C.**

_____

Edward J. Ciarimboli, Esquire
Corey S. Suda, Esquire
*Counsel for Plaintiff*

Date: May 1, 2026.