**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00997-TPO

DEANN MILLER, as surviving spouse of SCOTT MILLER, deceased,

    Plaintiff,

v.

MONIQUE TRUCKING LLC, a California Limited Liability Company, and
IGNACIO CRUZ-MENDOZA, an individual.

    Defendants.

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT TOTAL
QUALITY LOGISTICS, LLC'S 12(B)(6) MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT AS TO TOTAL QUALITY
LOGISTICS, LLC.**

AND NOW COME Plaintiff, DEANN MILLER, as surviving spouse of

SCOTT MILLER, deceased, ("Plaintiff") by and through her legal counsel,

Fellerman & Ciarimboli Law, P.C., hereby files this Brief in Opposition to the

Defendant Total Quality Logistics, LLC's Motion to Dismiss, and in support thereof

avers as follows:

## I.    COUNTERSTATEMENT OF FACTS

This case arises from a motor vehicle accident occurred on Highway 285

near Conifer in Jefferson County, Colorado on June 11, 2024 ("the Crash"), that

resulted in the death of Deann Miller's husband, Mr. Scott Miller, due to the

negligence and recklessness of Defendant Ignacio Cruz-Mendoza ("Cruz"). *See* Amended Complaint, ***Exhibit A***.

More specifically, on June 11, 2024, at some point before 11:00 a.m., Mr. Cruz-Mendoza arrived at the Searing facility in Cheyenne, Wyoming, to pick up and haul a load of steel piping bound for Intsel and/or Triple S in line with the terms of the Bill of Lading. *See* Deposition Testimony of Ignacio Cruz-Mendoza attached hereto as ***Exhibit B*** at 34; *see also* Bill of Lading, ***Exhibit C***.

Moving Defendant, Total Quality Logistics, LLC ("TQL") is an Ohio limited liability company with a principal place of business located at 4289 Ivy Pointe Boulevard, Cincinnati, Ohio 45245. TQL's USDOT number is listed as 2223295. According to FMCSA, TQL is a broker:

| | USDOT INFORMATION | |
|---|---|---|
| Entity Type: | BROKER | |
| USDOT Status: | ACTIVE | |
| USDOT Number: | 2223295 | |
| MCS-150 Form Date: | 06/09/2023 | |
| | OPERATING AUTHORITY INFORMATION | |
| Operating Authority Status: | AUTHORIZED FOR BROKER Property | |
| | For Licensing and Insurance details click here. | |
| MC/MX/FF Number(s): | MC-322572 | |
| | COMPANY INFORMATION | |
| Legal Name: | TOTAL QUALITY LOGISTICS LLC | |
| DBA Name: | | |
| Physical Address: | 4289 IVY POINTE BLVD CINCINNATI, OH 45245 | |
| Phone: | (513) 495-6760 | |
| Mailing Address: | 4289 IVY POINTE BLVD CINCINNATI, OH 45245 | |
| DUNS Number: | 79-145-9410 | |
| Power Units: | 0 | |

*See* Amended Complaint, ***Exhibit A***, ¶ 11-13.

Mr. Cruz-Mendoza testified that he was sent to the Searing facility on June 11, 2024, by the broker for the load, TQL. *See **Exhibit B*** at 11. Upon arriving at the Searing facility, Mr. Cruz-Mendoza confirmed that an agent of Searing provided him with instructions to give to the forklift driver who was loading his trailer. *Id.* at 56

According to Mr. Cruz-Mendoza, these instructions contained information such as how many straps were needed to secure the load to the trailer. *Id*. at 54. While at the Searing facility, Mr. Cruz-Mendoza helped the Searing agent load his trailer. *Id*. at 48. According to Mr. Cruz-Mendoza's account, he secured the load with tie-down straps as instructed by Searing, and Searing checked the tie-downs prior to allowing Mr. Cruz-Mendoza to exit the Searing facility. *Id*. at 49. Searing instructed Mr. Cruz-Mendoza on how many straps to use in securing the load. *Id*.

However, Searing and Mr. Cruz-Mendoza were in violation of FMCSA 393.106 regarding the requirements for securing cargo. Searing and Mr. Cruz-Mendoza failed to firmly immobilize and/or secure the steel beams in violation of FMCSA 393.106(b). Searing and Mr. Cruz-Mendoza failed to secure the cargo with chocks, wedges, or a cradle in violation of FMCSA 393.106(c) when strapping down the cargo. The aggregate working load limit for tie-downs must be at least one-half times the weight of the article or group of articles to be secured. *See* FMCSA 393.106(d). Searing and Mr. Cruz-Mendoza failed to ensure the aggregate working

load limit of each tie-down to adequately and safely secure the cargo on June 11, 2024. In addition, Searing and Mr. Cruz-Mendoza failed to secure the cargo with the appropriate number of tie-down straps to ensure that the cargo would not shift or fall in transport in violation of FMCSA 393.110(e). *See* Amended Complaint, ***Exhibit A***, ¶ 60-83. Nevertheless, Searing security officers allowed Mr. Cruz-Mendoza to exit the Searing facility. *See **Exhibit B***, at 54

The actions and/or inactions of Searing and Mr. Cruz-Mendoza caused the cargo to leave the Searing facility unsecured and unsafe and increased the risk of harm to the motoring public, including Decedent Scott Miller. On June 11, 2024, at or around 5:00 p.m., Mr. Cruz-Mendoza was operating the Tractor Trailer owned, leased, and/or assigned by Defendants Southbound on Highway 285 ("HWY-285") near milepost 232, fully loaded with steel piping weighing approximately 127,000 pounds. On June 11, 2024, at or around 5:00 p.m., Decedent Scott Miller was operating his 2012 Ford F-350 ("Ford") Southbound on HWY-285 near milepost 232. Mr. Cruz-Mendoza began to pass the vehicle ahead of him on HWY 285 when he crashed the Tractor Trailer into the left side of the vehicle. Although he struck a vehicle, Mr. Cruz-Mendoza continued driving at a high rate of speed on HWY 285 and began passing the Ford operated by the Decedent. Upon passing the Decedent on the left, the load being hauled by Mr. Cruz-Mendoza began spilling onto the Decedent's Ford and the roadway. Mr. Cruz-Mendoza continued traveling at a high

rate of speed before losing control of the Tractor Trailer, causing a chain collision involving five (5) vehicles on HWY 285. Upon information and belief, Mr. Cruz-Mendoza was operating the Tractor Trailer at nearly double the posted speed limit in the moments leading up to the crash. Decedent Scott Miller suffered catastrophic and fatal injuries, causing his death on June 11, 2024. *See* Amended Complaint, ***Exhibit A***, ¶ 60-83.

At all relevant times hereto, Defendants, TQL, Intsel, Triple-S, and Searing knew or should have known that Monique had an unsafe history in performing services as a motor carrier, including, but not limited to, the following[1]:

    a. **Operating a commercial motor vehicle without a license in violation of FMCSA 383.23(a) – October 2022;**

    b. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – October 2022;**

    c. **Operating a commercial motor vehicle without the appropriate license in violation of FMCSA 391.11(b)(5) – November 2022**;

    d. **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2023;**

    e. Failing to inspect and/or use emergency equipment in violation of FMCSA 392.8 – May 2023;

    f. Failing to have retroreflective material affixed to trailer manufactured after December 1993 in violation of FMCSA 393.11RT – May 2023;

    g. Inoperative and/or defective hazard warning lamp in violation of FMCSA 393.19 – May 2023;

---

[1] The bolded violations resulted in the operator and/or Monique being placed out of service ("OOS").

h.  Inoperative required lamp in violation of FMCSA 393.9 – May 2023;

i.  No and/or insufficient warning devices in violation of FMCSA 393.95(f) – May 2023;

j.  Inoperable headlamps in violation of FMCSA 393.9H – May 2023;

k.  Inoperative turn signal in violation of FMCSA 393.9TS – May 2023;

l.  **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – August 2023**;

m.  Failure to have sufficient tie-downs to prevent forward movement for load in violation of FMCSA 393.110(b) – August 2023;

n.  **Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2024**; and

o.  **Operating in violation of FMCSA Operational Out of Service Order for Failure to Permit Safety Audit in violation of FMCSA 385.337(b) – May 2024.**

Upon information and belief, and at all relevant times hereto, Defendants knew or should have known that Monique did not have operating authority to transport cargo in interstate commerce at the time of booking the subject load carried by Mr. Cruz-Mendoza on June 11, 2024. *See* Amended Complaint, *Exhibit A*, ¶ 89-109. Indeed, this is confirmed by the testimony of Mr. Cruz-Mendoza, who testified that he was not working for Monique in the month of May 2024 because Monique was "having trouble at the office." *See* Deposition Testimony of Mr. Cruz-Mendoza *Exhibit B* at 74-75.

Upon information and belief, at the time of the crash, Mr. Cruz-Mendoza was in violation of the FMCSR hours of service limits and consciously chose to operate the Tractor Trailer in a fatigued condition. Moreover, Defendants participated in, knew, or should have known that Mr. Cruz-Mendoza was operating over hours, driving while fatigued, and otherwise operating the Tractor Trailer in an unsafe, dangerous, and reckless condition in violation of the FMCSR and Colorado law. At all relevant times, upon information and belief, Defendants knew or should have known that Mr. Cruz-Mendoza was not a legally licensed commercial motor operator. *See* Amended Complaint, ***Exhibit A***, ¶ 89-109.

Moreover, despite the deplorable safety record, incompetence, and dangerous behavior of Mr. Cruz-Mendoza, Defendants negligently, recklessly, and with conscious disregard for the safety of the motoring public operated, selected, hired, retained, and/or assigned him to deliver goods to its customers using tractors and trailers. At all relevant times, Defendants exercised complete control over the dispatching of the Tractor Trailer driven by Mr. Cruz-Mendoza at the time of the crash. At all relevant times, Defendants exercised complete control over the routing of the Tractor Trailer driven by Mr. Cruz-Mendoza at the time of the crash. At all relevant times, Defendants had the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Mr.

Cruz-Mendoza should be considered an agent of Defendants. *See* Amended

Complaint, ***Exhibit A***, ¶ 89-109.

As a result of the Crash, Mr. Cruz-Mendoza was charged with 18-3-106(1)(a)

– Vehicular Homicide; 18-3-205(1)(a) – Vehicular Assault; 42-4-1401 (1) –

Reckless Driving; and 42-2-404 (1) – Driving Commercial Vehicle (Not Qualified).

*See* ***Exhibit A***, ¶ 84.

Thereafter, on November 10, 2025, Defendant TQL, filed this instant Motion

to Dismiss each and all of Plaintiff's claims against them with prejudice including

the claims in Counts I, II, III, V, VI, X, and XI of Plaintiff's Amended Complaint.

As set forth below, Defendant's Motion must be denied.

## II.     QUESTIONS PRESENTED

A. Whether Plaintiff has adequately set forth her Claims such that Defendant TQL has been placed on adequate notice of the claims against which they must now defend.?

Suggested Answer:   In the Affirmative.

B. Whether Plaintiff Claims against TQL are not preempted under the Federal Aviation Administration Authorization Act ("FAAAA") because the safety exception applies?

Suggested Answer:   In the Affirmative.

C. Whether Plaintiff has adequately set forth her Negligent Undertaking, Negligent Hiring, Training, Supervision, Selection, Joint Venture/Enterprise, and Wrongful Death Claims against Defendant TQL?

Suggested Answer:   In the Affirmative.

### III.  LEGAL STANDARD

Under a Rule 12(b)(6) motion, a Complaint may not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which could entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To survive a 12(b)(6) Motion to Dismiss, the Complaint must contain enough facts to state a claim to relief which is plausible on its face. Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). A plausible claim is a claim that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Complaint must accept the well-pleaded allegations of the Complaint as true and construe them in a light most favorable to the Plaintiff. Robbins v. Wilkie, 300 F.3d 1208, 1210 (10th Cir. 2002). As long as Plaintiff offers sufficient factual allegations such that the right to relief is raised beyond the speculative level, he has met the threshold pleading standard. Bryson v. Gonzalas, 534 F.3d 1282, 1286 (10th Cir. 2008).

### IV.  ARGUMENT

**A. Plaintiff has adequately set forth her Claims such that Defendant TQL has been placed on adequate notice of the claims against which they must now defend.**

The Tenth Circuit has noted that the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context. Fair notice under Rule 8(a)(2) depends on the type of case. For example, an action based on an automobile accident, or trucking crash as is the situation here, may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time. *See* Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008).

Counts I and II of Plaintiff's Amended Complaint contains adequate averments of material fact to establish a prima facie claim of Negligence and/or Claims under Colorado's Wrongful Death Act against Defendant TQL. *See **Exhibit A*** at Counts I and II.

It was clearly averred that the negligence, carelessness, and/or recklessness of Defendants, as being vicariously liable for the actions of Mr. Cruz-Mendoza, consisted of, but are not limited to, the following:

a. Failing to maintain proper and adequate control of his Tractor Trailer;

b. Failing to keep his eyes on the road at all times;

c. Failing to pay proper attention while operating his Tractor Trailer on HWY 285;

d. Failing to take proper precautions in the operation of his Tractor Trailer so as to avoid the crash;

e. Operating his Tractor Trailer in a negligent, careless, and reckless manner without due regard to the rights and safety of the Decedent;

f. Failing to exercise due care and caution under all of the existing circumstances;

g. Failing to have his Tractor Trailer under such control that it could be readily stopped, turned aside, or the speed thereof slackened upon the appearance of danger;

h. Failing to remain alert;

i. Operating his Tractor Trailer in a distracted manner;

j. Consciously choosing to operate the Tractor Trailer without a valid commercial driver's license;

k. Failing to properly and adequately secure the cargo to his trailer;

l. Failing to reduce his speed in time to avoid crashing into traffic on HWY 285;

m. Traveling at an excessive rate of speed under the circumstances;

n. Violating the applicable rules, regulations, and laws pertaining to the safe and proper operation of motor vehicles and/or tractor-trailers;

o. Failing to operate his Tractor Trailer in accordance with the Federal Motor Carrier Safety Regulations;

p. Failing to properly control his Tractor Trailer in light of the circumstances then and there existing, including traffic patterns existing on the roadway;

q. Failing to make necessary and reasonable observations while operating his Tractor Trailer;

r. Failing to apply his brakes timely;

s. Violating FMCSA Regulation 383 dealing with required knowledge and skills;

t. Consciously choosing to drive at an unsafe speed given the circumstances;

u. Consciously refusing to reduce speed in response to traffic patterns then and there existing on the roadway;

v. Consciously choosing to disregard traffic patterns then and there existing on the roadway;

w. Consciously choosing to drive distracted;

x. Failing to perform a proper pre-trip inspection;

y. Violating FMCSA Regulation 393.100 dealing with shifting and falling cargo;

z. Violating both the written and unwritten policies, rules, guidelines, and regulations of Defendants;

aa. Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

bb. Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

cc. Failing to ensure the parts and accessories of the Tractor Trailer were in good working order in violation of Section 392.7;

dd. Failing to properly control his Tractor Trailer unit in light of the circumstances then and there existing on the roadway;

ee. Failing to make necessary and reasonable observations while operating the Tractor Trailer;

ff. Failing to take evasive action and/or failing to take appropriate and timely evasive action to avoid losing control of the Tractor Trailer;

gg. Violating Sections 383.110; 383.111; and 383.113 dealing with required knowledge and skill;

hh. Violating Section 395.1 concerning hours of service of drivers;

ii. Making a conscious choice to drive in a fatigued condition, knowing that driving in a fatigued condition impairs perception and judgment;

jj. Failing to adhere to the amount of driving hours limit;

kk. Causing the Crash due to being on the road for more than the regulated number of hours;

ll. Operating the Tractor Trailer in an unsafe condition in violation of Section 396.7;

mm.    Failing to inspect the Tractor Trailer before and during its operation in violation of Sections 396.9; 396.11; 396.13; and 396.17;

nn. Recklessly failing to keep proper braking distance between his Tractor Trailer and the vehicle Decedent was operating in violation of the Uniform Commercial Driver's Manual;

oo. Failing or consciously choosing not to follow the Uniform Commercial Driver's Manual as it relates to matching speed to road surface; and

pp. Acting with a conscious disregard for the rights and safety of others, including the Plaintiff.

It was further clearly averred that as a result of the negligent or reckless acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Scott Miller, suffered catastrophic, permanent, and fatal injuries and death, resulting in the entitlement to damages under the Wrongful Death Act and Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, hereby claims the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act. Plaintiff, D. Miller, as Surviving Spouse of Scott Miller, deceased, claims Defendants above mentioned reckless acts and reckless failures to act constitute a felonious killing pursuant to C.R.S. § 13-21-203. *See* Amended Complaint, ***Exhibit A*** Counts I and II.

Count III of Plaintiff's Amended Complaint contains adequate averments of material facts to establish a prima facie claim of Negligent hiring, supervision, retention and selection of Mr. Cruz-Mendoza against Defendant TQL. It was

further clearly averred that the negligence, carelessness, and/or recklessness of

Defendants, in the hiring, supervision, retention and selection of Mr. Cruz-

Mendoza, consisted of the following:

a.  Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents, including Mr. Cruz-Mendoza;

b.  Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to operate a commercial vehicle safely;

d.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR;

f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm.    Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

*See* Amended Complaint, ***Exhibit A*** Count III

Count V of Plaintiff's Amended Complaint contains adequate averments of material facts to establish a prima facie claim of Negligent hiring, supervision, retention and selection of Monique against Defendant TQL. It was further clearly averred that Defendants knew or should have known that Monique had an unsafe history in performing services as a motor carrier, including, but not limited to:

a. Operating a commercial motor vehicle without a license in violation of FMCSA 383.23(a) – October 2022;

b. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – October 2022;

c. Operating a commercial motor vehicle without the appropriate license in violation of FMCSA 391.11(b)(5) – November 2022;

d. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2023;

e. Failing to inspect and/or use emergency equipment in violation of FMCSA 392.8 – May 2023;

f. Failing to have retroreflective material affixed to trailer manufactured after December 1993 in violation of FMCSA 393.11RT – May 2023;

g. Inoperative and/or defective hazard warning lamp in violation of FMCSA 393.19 – May 2023;

h. Inoperative required lamp in violation of FMCSA 393.9 – May 2023;

i. No and/or insufficient warning devices in violation of FMCSA 393.95(f) – May 2023;

j. Inoperable headlamps in violation of FMCSA 393.9H – May 2023;

k. Inoperative turn signal in violation of FMCSA 393.9TS – May 2023;

l. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – August 2023;

m. Failure to have sufficient tie-downs to prevent forward movement for load in violation of FMCSA 393.110(b) – August 2023;

n. Failure to have record of duty status in violation of FMCSA 395.8(a)(1) – May 2024; and

o. Operating in violation of FMCSA Operational Out of Service Order for Failure to Permit Safety Audit in violation of FMCSA 385.337(b) – May 2024.

*See* Amended Complaint, ***Exhibit A*** Count V.

It was further clearly averred that the negligence, carelessness, and/or recklessness of Defendants, in the hiring, supervision, retention and selection of Monique as a carrier consisted of the following:

a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Monique;

b. Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c. Hiring and/or continuing to employ Monique even though it knew or should have known that their violation of the FMCSA hours of service made the company unfit to operate a commercial vehicle safely;

d. Hiring and/or continuing to employ Monique even though the company had a propensity for driving violations;

e. Hiring and/or continuing to employ Monique even though the company had a propensity for violating the "Rules of the Road" and FMCSR;

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Monique even though it knew or should have known that its propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Monique to carry its loads when it knew or should have known that the company was not properly qualified and/or trained;

j. Allowing Monique to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of Defendants;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n. Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa.  Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb.  Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc.  Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd.  Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee.  Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm.    Failing to suspend, discipline, or provide remedial training to Monique prior to the Crash despite its history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

*See* Amended Complaint, ***Exhibit A*** Count V.

Count VI of Plaintiff's Amended Complaint contains adequate averments of material facts to establish a prima facie claim of Negligent Undertaking against Defendant TQL. It was further clearly averred that TQL failed to exercise reasonable care and increased the risk of harm in failing to adequately and safely transport goods on HWY 285 on June 11, 2024. Additionally, TQL undertook the

performance of said duties and was negligent in its undertaking in the following

ways:

a.  Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Mr. Cruz-Mendoza;

b.  Failing to train and/or properly train Mr. Cruz-Mendoza prior to allowing him to operate its Tractor Trailer;

c.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

d.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for driving violations;

e.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though he had a propensity for violating the "Rules of the Road" and FMCSR;

f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Mr. Cruz-Mendoza even though it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Mr. Cruz-Mendoza to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

j.  Allowing Mr. Cruz-Mendoza to operate tractor-trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a third-party vendor to audit their drivers' logs, or if they did use a third-party vendor, failing to use it appropriately;

w.  Failing to have policies and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383.23;

aa. Failing to act upon and remedy violations of FMCSA regulation 391.11;

bb. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

cc. Failing to act upon and remedy violations of FMCSA regulation 393.100;

dd. Failing to act upon and remedy violations of FMCSA regulation 395.8;

ee. Failing to act upon and remedy known violations of industry standards;

ff. Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

gg. Failing to have appropriate policies and procedures with regard to hiring of drivers;

hh. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ii. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

jj. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

kk. Consciously disregarding federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

ll. Violating all applicable provisions of the FMCSA;

mm. Failing to suspend, discipline, or provide remedial training to Mr. Cruz-Mendoza prior to the Crash despite his history of unsafe driving practices; and

nn. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor-trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Cruz-Mendoza.

*See* Amended Complaint, ***Exhibit A*** Count VI.

Here, it was also clearly averred that the Defendants were engaged in a joint venture to haul goods and materials in interstate commerce for profit. Mr. Cruz-Mendoza was paid by all Defendants for this transportation, including allowances for fuel costs. Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile applications to track the status of shipment from origin to delivery. As a result of the transportation, Defendants earned, or intended to earn, a profit. Defendants controlled the Tractor

Trailer through its duly authorized agent, servant, and/or employee, Mr. Cruz-Mendoza. Mr. Cruz-Mendoza was performing a service for the benefit of Defendants, namely the transportation of goods and material for profit. Mr. Cruz-Mendoza was transporting the goods and materials. Defendants had the right to control Mr. Cruz-Mendoza in performing this service. Defendants exercised this control over Mr. Cruz-Mendoza, inter alia, in the manner described fully herein. Defendants held out Mr. Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant, and/or employee of Defendants and it is vicariously liable for the acts and/or omissions of Mr. Cruz-Mendoza. As a direct and proximate cause of the above-stated acts and omissions, Plaintiff suffered, inter alia, serious, severe, permanent, and fatal injuries as has been previously stated herein. *See* Amended Complaint, ***Exhibit A*** Count X.

It was further clearly averred that the Defendants were engaged in a joint enterprise to haul steel for profit. Mr. Cruz-Mendoza was paid by all Defendants for this transportation, including allowances for fuel costs. Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile applications to track the status of shipment from origin to delivery. As a result of the transportation of goods on the above-referenced date, place, and time, Defendants earned or intended to earn a profit.

Defendants controlled the Tractor Trailer through its fully authorized agent, servant, and/or employee, Mr. Cruz-Mendoza. On the above-referenced date, place and time, Mr. Cruz-Mendoza was performing a service for the benefit of Defendants, namely the transportation of goods in interstate commerce for profit. Defendants were aware that Mr. Cruz-Mendoza was transporting goods for profit. Defendants had the right to control Mr. Cruz-Mendoza in performing these services. Defendants exercised control over Mr. Cruz-Mendoza, inter alia, in the manner described fully herein. Defendants held out Mr. Cruz-Mendoza as an agent, servant, and/or employee such that a reasonable person would conclude that Mr. Cruz-Mendoza was an agent, servant, and/or employee of Defendants who are vicariously liable for the acts and/or omissions of Mr. Cruz-Mendoza. Defendants enjoyed unified administrative control as all Defendants participated in their full-service motor carrier, transportation and distribution activities to achieve their unified goal of transportation of goods to their final destination in a timely fashion for profit. Defendants enjoyed similar or supplementary business functions in their full-service motor carrier, transportation and distribution activities to achieve their unified goal of transportation of goods to its final destination in a timely fashion for profit. Defendants acted as affiliated or sister corporations possessing common ownership and/or an administrative nexus. Defendants also acted as a joint venture and/or joint enterprise when operating their full-service motor carrier,

transportation and distribution activities to achieve their unified goal of delivery of goods to its proper destination in a timely fashion for profit. Defendants shared and/or utilized the same address and/or building premises, equipment, vehicles, trailers, accountants, attorneys, insurance agents, officers, directors and/or employees. Defendants were responsible for operational management of Defendants' business and played an active role in the ongoing business activities of Defendants' business and had full authority to direct activities of Defendants' business. Defendants shared in the profits that were generated and leased and/or owned a common facility from which Defendants operated and shared equipment, office space, facilities, attorneys, accountants, and insurance agents. As a direct and proximate cause of the above-stated acts and omissions, Mr. Miller suffered, inter alia, the serious, severe, and permanent injuries stated herein. *See* Amended Complaint, ***Exhibit A*** Count XI.

Contrary to Defendants' contentions, Plaintiff has alleged detailed factual averments in support of her Claims against TQL in Counts I, II, III, V, VI, X, and XI of her Amended Complaint. Thus, TQL has been placed on adequate notice of these claims under the pleading standard and material issues of fact remain over employment status and control of the load warranting additional discovery. It is clear that under this pleading standard as articulated above, Plaintiff has averred sufficient factual allegations such that the right to relief as to these claims has been raised

beyond the speculative level. Thus, Plaintiff has met the threshold pleading and notice standard. Because the Court must accept the truth of all factual allegations in the Amended Complaint and must draw all reasonable inferences in favor of the non-movant, there is no question that Plaintiff has adequately pled her Claims in Counts I, II, III, V, VI, X, and XI of her Amended Complaint. Accordingly, Defendant's Motion must be denied.

**B. <u>Plaintiff's Claims against TQL are not preempted under the Federal Aviation Administration Authorization Act ("FAAAA") because the safety exception applies.</u>**

TQL next argues that their selection or brokering of a motor carrier for transportation of the steel load is not connected to motor vehicle safety and that Plaintiff's claims should thus be preempted under the Federal Aviation Administration Authorization Act ("FAAAA").

However, there should be no preemption where there is no impact on rates, routes, or services, or where the impact is not significant, but merely tenuous, remote, or peripheral. See <u>Bedoya v. American Eagle Express, Inc.</u>, 914 F.3d 812 (3rd Cir. 2019).

Here, allowing Colorado to apply a duty of care that would require TQL to make reasonable choices with respect to how freight is shipped through the state does not "relate to" rates, routes, or services in a way that is significant enough to trigger preemption under the language of the Act. Applying the logic of TQL,

brokers and motor carriers would essentially be completely immune from any state tort liability for their negligent actions. Most significantly, citizens of Colorado would have no recourse to recover for injuries they sustained resulting from the negligence of motor carriers and brokers. Surely, it is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by such illegal conduct.

Moreover, Plaintiff's state law claims here against TQL should not be dismissed under FAAAA preemption because the safety exception applies. TQL acknowledges that the 10th Circuit has not yet directly addressed this issue, but other Circuit Courts have. *See* Miller v. C.H. Robinson Wrldwide, Inc., 976 F.3d 1016 (9th Cir. 2020) (holding that negligent hiring claims against brokers fall within the safety exception and are thus not preempted by the Act); Bedoya v. American Eagle Express, Inc., 914 F.3d 812 (3rd Cir. 2019) (drivers for a logistics company claims were not preempted by the FAAAA); Cox v. Total Quality Logistics Inc., 142 F.4th 847 (6th Cir. 2025) (claims against TQL for negligent hiring motor carrier whose driver was involved in an automobile crash was not preempted by the Act).

TQL's reliance on Trujillo v. Nucor Corp., 2025 WL 1251192 (D. Col. March 24, 2025) is misplaced and the facts here are more akin to Cox where TQL was also a Defendant Broker. Moreover, Trujillo is distinguishable, as the court relied on a formal Master Agreement expressly establishing an independent contractor

relationship and a multi-tiered contracting structure in concluding that Nucor lacked control over the motor carrier, circumstances that are not present here. If the Trujillo rationale was followed, all participants in the trucking industry would have blanket immunity from state law tort actions and this decision completely departs from the overwhelming majority of cases throughout the country holding that FAAAA preemption does not extend to personal injury claims against brokers. This type of extreme interpretation of the FAAAA preemption language was not the intention of Congress when passing this law and is clearly unfounded.

In fact, District Courts around the country have expressly held that the FAAAA does not preempt state law tort claims. *See* Owens v. Anthony, No. 2:11-cv-33, 2011 U.S. Dist. LEXIS 139961, 2011 WL 6056409, at *1 (M.D. Tenn. 2011); *see also* Ciotola v. Star Transp. & Trucking, LLC, 481 F. Supp. 3d 375, 2020 U.S. Dist. LEXIS 152963, 2020 WL 4934592 (M.D. Pa. 2020); Whitinger v. C.H. Robinson, Case No. CJ-2013-120 (Okl. Trial. Ct. 2018); Evans v. Primoris Servs. Corp., Case No. DC-15-0449, 2018 WL 1427549 (Tex. Trial Ct. 2017); Segura v. C.H. Robinson, Case No. C-2572-26-F (Tex. Trial Ct. 2017); Sharp v. 68 Transport, LLC, Case No. CJ-15-70, 2016 WL 9650516 (Okl. Trial Ct. 2016); Morales v. Redco Transport Ltd., No. 5:14-cv-129, 2015 U.S. Dist. LEXIS 169801, 2015 WL 9274068 (S.D. Tex. 2015); Montes De Oca v. El Paso-Los Angeles Limousine Express, Inc., 2015 U.S. Dist. LEXIS 33707, 2015 WL 1250139, *1-2 (C.D. Cal.

2015); <u>Jimenez-Ruiz v. Spirit Airlines, Inc.</u>, 794 F. Supp. 2d. 344, 2011 WL 2460873 (D. Puerto Rico 2011).

In <u>Cox</u>, Mr. Cox argued that his claim falls within the scope of § 14501(c)(2)(A), which exempts from preemption "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). To determine whether the exception applies, the Court addressed two issues: (1) whether common law tort claims like Mr. Cox's negligent hiring claim are part of a state's "safety regulatory authority," and (2) whether Mr. Cox's claim is "with respect to motor vehicles." *See* <u>Cox v. Total Quality Logistics Inc</u>., 142 F.4th 847 (6th Cir. 2025).

As to the first prong, the Court determined that because common law claims like Mr. Cox's are part of the "safety regulatory authority of a state", Mr. Cox satisfied the first prong under 49 U.S.C. § 14501(c)(2)(A). *Id*.

As to the second prong, the Court looked to the phrase "with respect to motor vehicles" noting that the FAAAA expressly defines "motor vehicle" as any "vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation, or a combination." 49 U.S.C. § 13102(16). The Act's statutory definitions also make clear that such motor vehicles are core to the services provided by brokers. The Act defines "broker" as any "person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement,

or otherwise as selling, providing, or arranging for, *transportation by motor carrier* for compensation." *Id.* § 13102(2) (emphasis added). And it defines "motor carrier" as any "person providing *motor vehicle transportation* for compensation." *Id.* § 13102(14) (emphasis added). Thus, the Act recognizes that brokers are entities that work with motor carriers to sell, provide, and arrange for transportation via motor vehicles. Following this reasoning based on the express language of the Act, the Court held that Mr. Cox's claims against TQL substantively concern motor vehicles and motor vehicle safety, and that the claims were within "the safety regulatory authority of a state with respect to motor vehicles". *Id*.

Here, we have a nearly identical fact pattern with the same Defendant, and the same reasoning should apply. Plaintiff's claims against TQL substantively concern motor vehicles and motor vehicle safety, and the claims are clearly within "the safety regulatory authority of a state with respect to motor vehicles". Thus, Plaintiff's claims against TQL fall within the ambit of the safety exception and as such, should not now be considered preempted by the FAAAA despite TQL's contentions to the contrary.

C. **Plaintiff has adequately set forth her Negligent Undertaking, Negligent Hiring, Training, Supervision, Selection, Joint Venture/Enterprise, and Wrongful Death Claims against Defendant TQL.**

A Defendant may be subject to liability for negligent undertaking as defined by the Restatement (Second) if they undertake, gratuitously or for consideration, to

render services to another which he should recognize as necessary for the protection

of a third person or his things, is subject to liability to the third person for physical

harm resulting from his failure to exercise reasonable care to protect his undertaking,

if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he

has undertaken to perform a duty owed by the other to the third person, or (c) the

harm is suffered because of reliance of the other or the third person upon the

undertaking." *See* Restat. 2d of Torts § 324(a) (emphasis added).

As set forth above, Count VI of Plaintiff's Amended Complaint contains

adequate averments of material fact to establish a prima facie claim of Negligent

Undertaking against Defendant TQL. *See **Exhibit A*** at Count VI.

A Defendant may be subject to liability for negligent hiring, training,

supervision, and selection if they knew or should have known that an employee's

conduct would subject third parties to an unreasonable risk of harm. *See* Trujillo v.

Moore Brothers, Inc., 2024 WL 1219701 (US Dist. Ct. Col. March 1, 2024).

Here, as set forth above, it was clearly averred that the Defendants were

negligent, careless, and/or reckless in the hiring, supervision, retention and selection

of Mr. Cruz-Mendoza and in the selection of Monique as a carrier. *See **Exhibit A*** at

Counts III and V.

Moreover, a Defendant may be subject to liability under a joint venture if there

is: (1) a joint interest in property; (2) an express or implied agreement to share in

profits or losses of the venture; and (3) actions and conduct showing joint cooperation in the venture." Compass Ins. Co. v. City of Littleton, 984 P.2d 606, 619 (Colo. 1999) (*quoting* City of Englewood v. Commercial Union Assur. Cos., 940 P.2d 948, 957 (Colo. App. 1996).

Furthermore, the Restatement (Second) of Torts defines a joint enterprise as 1) an agreement, express or implied, among the members of the group 2) a common purpose to be carried out by the group 3) a community of pecuniary interest in that purpose among the members and 4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *See* Restat. 2d of Torts § 491 comment *c* (emphasis added).

Counts X and XI of Plaintiff's Amended Complaint contain adequate averments of material fact to establish a prima facie claim of a Joint Venture and/or Enterprise amongst Manrique Agramon d/b/a Monique Trucking LLC, Total Quality Logistics LLC, Intsel Steel West LLC, Triple-S Steel Holdings, Inc., Searing Industries, Inc. and Ignacio Cruz-Mendoza. *See **Exhibit A*** at Counts X and XI. Moreover, the Bill of Lading serves as further evidence of this Joint Venture and/or Enterprise. *See **Exhibit C***.

Lastly, TQL argues because these underlying claims should be dismissed so should the derivative Wrongful Death Claims. However, as set forth above, because Plaintiff's Amended Complaint contains adequate averments of material fact to

establish a prima facie case for Negligent Undertaking, Vicarious Liability, and Joint Venture/Enterprise, none of these claims, including the Wrongful Death Claims in Count I, should now be dismissed at this early stage of the proceedings without first conducting more discovery on these issues.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendant's 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint as to TQL. Plaintiff respectfully submits the better course is to allow all claims and issues to remain for additional discovery and be decided by the trial Judge based on all discovery and information available and not just based on the pleadings.

Respectfully submitted,

**FELLERMAN & CIARIMBOLI LAW, P.C.**

Edward J. Ciarimboli, Esquire
Corey S. Suda, Esquire
*Counsel for Plaintiff*

Date: May 1, 2026.