IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00997-NYW-TPO

DEANN MILLER, as Surviving Spouse of SCOTT MILLER, deceased,

      Plaintiff,

v.

MANRIQUE AGRAMON d/b/a MONIQUE TRUCKING LLC;
TOTAL QUALITY LOGISTICS LLC;
INTSEL STEEL WEST LLC;
TRIPLE-S STEEL HOLDINGS, INC.;
SEARING INDUSTRIES, INC.; and
IGNACIO CRUZ-MENDOZA;

      Defendants.

---

**DEFENDANT TOTAL QUALITY LOGISTICS LLC'S REPLY IN SUPPORT OF
FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT**

---

Defendant Total Quality Logistics LLC ("TQL") submits this Reply in Support of its

Motion to Dismiss Plaintiff Deanne Miller's Amended Complaint [ECF 62].

## I.    <u>INTRODUCTION</u>

Plaintiff's 35-page Opposition [ECF 79] confirms, rather than cures, the core defects TQL

identified in its Motion to Dismiss. Plaintiff still pleads virtually no facts about **<u>TQL</u>** itself, instead

relying on undifferentiated allegations against "Defendants"—the very group-pleading deficiency

that formed the principal basis for TQL's Motion to Dismiss even before addressing preemption—

thereby flouting Rule 8 and the Tenth Circuit's insistence on specifying who did what to whom.

Her vicarious-liability and negligent-undertaking theories remain wholly conclusory and fail to

allege any facts showing TQL controlled the manner and means of Cruz-Mendoza's work or

undertook any independent duty to Plaintiff. While the United States Supreme Court's decision in

*Montgomery v. Caribe Transport II, LLC*, No. 24-1238 (U.S. May 14, 2026), forecloses TQL's preemption arguments for *properly-pled* state-law negligence claims against freight brokers, *Montgomery* does not permit claims failing longstanding basic pleading standards to proceed. Putting preemption aside, Plaintiff alleges in detail what *others* did – Monique, Cruz-Mendoza, Searing – but alleges virtually nothing about TQL. She presupposes TQL belongs in this lawsuit simply because it acted as the broker on the load, without alleging any TQL-specific conduct that was negligent under Colorado law. Her claims against TQL should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Impact of *Montgomery* on TQL's Motion to Dismiss.

Since TQL filed its Motion to Dismiss in November 2025 [ECF 62], the United States Supreme Court issued its decision in *Montgomery v. Caribe Transport II, LLC*, No. 24-1238 (U.S. May 14, 2026), resolving a circuit split regarding preemption for state law negligence claims under the Federal Aviation Administration Authorization Act (FAAAA). In a unanimous opinion, the Court held that a negligent-hiring claim against a freight broker can fall within the FAAAA's "safety exception" when the claim concerns motor vehicle safety, and therefore is not categorically preempted. In light of *Montgomery*, TQL recognizes that its prior argument—that negligent-selection claims against brokers are categorically outside the safety exception and therefore preempted, as suggested by *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261 (11th Cir. 2023), and *Ye v. GlobalTranz Enterprises*, 74 F.4th 453 (7th Cir. 2023)—no longer reflects the controlling interpretation of the FAAAA. TQL respectfully withdraws that categorical contention and acknowledges that *Montgomery* has superseded those decisions on that narrow point.

Critically, however, *Montgomery* removes only a categorical preemption defense; it does not relieve Plaintiff of her obligation to plead a plausible claim against *this* broker under Rule 8 and *Twombly* and *Iqbal*.[1] As post-*Montgomery* (and pre-*Montgomery*) decisions recognize, broker negligence claims that survive preemption can still be dismissed where the allegations are "threadbare" or conclusory. *See, e.g.*, *Barkholtz v. Ivory*, No. 24-cv-889, 2026 WL 1383160, at *3 (W.D. Wisc. May 18, 2026) (denying broker's motion to dismiss on preemption grounds following supreme court's decision in *Montgomery*, but granting broker's motion to dismiss for failure to state a claim where allegations against broker "are mere threadbare legal conclusions")[2]; *Stark v. J.B. Hunt Transport LLC*, No. 5:25-cv-00040-DTB, 2025 WL 2377029, at *4–7 (C.D. Cal. Mar. 12, 2025) (similar). As explained below, Plaintiff's claims against TQL fail for the same reason: they are supported only by undifferentiated and conclusory allegations, not by TQL-specific facts. *Montgomery* does not alter the outcome of TQL's Motion to Dismiss.

### B.    Plaintiff's Opposition Confirms Her Claims Against TQL Rest on Impermissible Group Pleading.

While *Montgomery* holds that claims against a broker may fall within the "safety

---

[1] In a concurring opinion, Justice Kavanaugh recognized that the Supreme Court's decision does not mean brokers are automatically liable in trucking accident cases: "[i]mportantly, the Court's decision today should not be read to mean that brokers will routinely be subject to state tort liability in the wake of truck accidents. As even plaintiff's counsel stressed, brokers should be able to successfully defend against state tort suits if the brokers have acted reasonably and arranged transportation with reputable trucking companies." Such will be the case here.

[2] Specifically, the court in *Barkholtz* determined: "Paragraphs 36 and 37—the only allegations discussing Summit's liability—allege that Summit is liable for negligent entrustment because it was the broker engaged to have CH Logistics ship buckwheat for Washington Producers. Nothing in the complaint suggests that Summit knew, or should have known, that CH Logistics or Michael Ivory were particularly dangerous or unqualified. Likewise, nothing in the complaint suggests that Summit breached a duty of care to plaintiffs or that Summit's actions were a sufficiently proximate cause of plaintiffs' injuries." 2026 WL 1383160 at *3.

exception" to FAAAA preemption, it does *not* hold that negligent-hiring claims against brokers *must* survive a motion to dismiss. It simply clarifies that such claims *may* proceed where they satisfy the ordinary pleading requirements for state-law negligent claims—*i.e.*, facially plausible allegations. Here, Plaintiff's allegations here fall well short of that standard. She does not plead any non-conclusory facts about how TQL vetted or selected the carrier, any specific safety-related information TQL knew or should have known, or any concrete facts by which TQL's conduct made it reasonable or foreseeable that this particular crash would occur. Instead, she offers generic, group-pleaded assertions that "Defendants" negligently hired and supervised others, without identifying TQL-specific conduct or tying any allegedly deficient vetting to the accident at issue. Those kinds of undifferentiated and conclusory allegations fail under Rule 8 and 12(b)(6), even in the post-*Montgomery* landscape.

TQL's Motion to Dismiss explains that the 236-paragraph Amended Complaint contains only *four* factual allegations specific to TQL: it is an Ohio LLC with its principal place of business in Cincinnati; it has a particular USDOT number; it is a "broker"; and it "was the broker for the Steel Load." (Mot. at 6 (citing FAC ¶¶ 30, 37–39, 25).) In her Opposition, Plaintiff identifies no additional non-conclusory facts about TQL. Instead, she simply repeats the same problematic, undifferentiated lists of what "Defendants" allegedly did wrong.[3] That does not satisfy Rule 8. Whatever force *Conley v. Gibson*, 355 U.S. 41 (1957) and its "no set of facts" pleading standard once had (*see* Opp. at 9), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), now require *facts* that make a claim plausible and

---

[3] *See* Opp. at 5–6 (copying and pasting various allegations from the FAC in subparagraphs (a)–(o)); 10–11 (subparagraphs (a)–(pp)); 14–15 (subparagraphs (a)–(nn)); 17 (subparagraphs (a)–(o)); 18–20 (subparagraphs (a)–(nn)); 21–23 (subparagraphs (a)–(nn)).

give each defendant fair notice of the basis for the claim.

Plaintiff nevertheless asserts TQL "has been placed on adequate notice of the claims against which they now must defend," relying primarily on *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008). (*See* Opp. at 9–10.) She quotes *Robbins* for the proposition that a simple one-defendant negligence case requires little more than an allegation that the defendant negligently struck the plaintiff with a car on a certain date and time, and suggests that, because this case arises from a car crash, her threadbare allegations against TQL are enough. (*See* Opp. at 10 (citing *Robbins*, 519 F.3d at 1248).) But *Robbins* also makes expressly clear that, in a multi-defendant case, "it is particularly important … that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." 519 F.3d at 1250 (emphasis in original). Plaintiff does not engage that part of *Robbins* or with the District of Colorado authority TQL cites – *Carrado*, *Del Castillo*, *Mao*, *Pinto-Rios* – applying that same rule to group pleading. (*Compare* Mot. at 5–8 *with* Opp.)

Since the filing of TQL's Motion to Dismiss, the District of Colorado has again reiterated this criticism of group pleading. *See Arias v. Newman*, No. 1:24-cv-01246-SKC-KAS, 2026 WL 554693, at *1 (D. Colo. Feb. 27, 2026) ("It is of zero utility to switch out the word 'Defendants' with a list of names. We already know the Defendants' names. What we do not know is what they did *as individuals* to warrant being included in this lawsuit."). *Arias* cautions that "group pleading such as this amounts to little more than a fishing expedition. 'Rule 8 does not permit such aimless trawling.'" *Id.* (quoting *Yamashita v. Scholastic, Inc.*, No. 16-CV-9201 (KBF), 2017 WL 74738, at *2 (S.D.N.Y. Jan. 5, 2017), *aff'd*, 936 F.3d 98 (2d Cir. 2019)). "Under the Federal Rules of Civil Procedure, a plaintiff is not permitted to cast as wide of a net as possible over potential defendants

5

and then rely on the discovery process to '[search] for evidence to support facts he has not yet pleaded.'" *Id.* (quoting *Giovanelli v. D. Simmons Gen. Contracting*, Civ. No. 09-1082, 2010 WL 988544, at *5 (D.N.J. Mar. 15, 2010)). Plaintiff's own "aimless trawling" against TQL in this case is apparent by her request for discovery *before* responding to the Motion to Dismiss [*see* ECF 64] and her repeated statements that "additional discovery" and "more discovery" is warranted now— an acknowledgment that she lacks facts to support her claims against TQL. (*See* Opp. at 34.)

All Plaintiff has done in her Opposition is copy and paste her own deficient allegations and assert—without any analysis—that she "clearly averred" her claims. (*See* Opp. at 10, 13–14, 16, 18, 20, 23–24.) Those allegations remain generic accusations against "Defendants" as a block (e.g., failing to: maintain control of the tractor-trailer; inspect and maintain equipment; comply with FMCSA hours-of-service rules; train and discipline "its" drivers, and so on). *Montgomery* does not erode this Court's insistence that Plaintiff plead "*who* is alleged to have done *what* to *whom*." *Robbins*, 519 F.3d at 1250 (emphasis in original). Plaintiff's claims are not sufficiently plead simply because she says so.

Plaintiff's "Counterstatement of Facts" underscores the problem. There, Plaintiff describes in detail what ***Cruz-Mendoza*** and ***Searing*** allegedly did with respect to loading, securement, and the accident itself, but says nothing non-conclusory about TQL beyond asserting TQL brokered the load and "sent" Cruz-Mendoza to pick it up. (Opp. at 1–8.) There are no factual allegations that TQL loaded or inspected the steel, directed securement, or controlled how the tractor-trailer was operated. In a case involving multiple defendants with unique roles, that is precisely the sort of group pleading Rule 8 forbids.

      **C.**      **Plaintiff Has Not Pled a Plausible Basis for Vicarious Liability Against TQL.**

To the extent Plaintiff relies on a theory that TQL is somehow vicariously liable for Cruz-Mendoza and/or Monique (*see, e.g.*, Opp. at 10), her claims still fail. Vicarious liability is not automatic. It requires (1) a qualifying relationship between the tortfeasor and TQL; and (2) factual allegations showing TQL's right to control the manner and means of the tortfeasor's work. Plaintiff pleads neither. (*See generally* FAC.)

Under Colorado law, a principal is not generally liable for torts committed by an independent contractor who is performing services for the principal, but an employer may be vicariously liable for torts committed by its employees or agents. *See, e.g.*, *Daly v. Aspen Ctr. for Women's Health, Inc.*, 134 P.3d 450, 452 (Colo. App. 2005). The key feature distinguishing those situations is the extent of the principal's ability to control the acts of the tortfeasor. *Norton v. Gilman*, 949 P.2d 565, 567 (Colo. 1997). An independent contractor is "one who engages to perform services for another, according to his own methods and manner, free from the direction and control of the employer in all matters relating to the performance of the work, and accountable to him only for the result to be accomplished." *Digit. Landscape, Inc. v. Media Kings, LLC*, 440 P.3d 1200, 1212 (Colo. App. 2018). Colorado applies a fact-intensive test focused principally on the putative principal's right to control the details of the work, guided by the factors in Restatement (Second) of Agency § 220, which include the extent of control the principal exercises over the details of the work. *Norton*, 949 P.2d at 567.[4] The test demands concrete allegations about control

---

[4] Other factors include: whether or not the party employed is engaged in a distinct occupation or business; the kind of occupation and whether work of that type is typically done with or without employer supervision; the degree of skill required to perform the task; whether the master or party employed supplies the place and instrumentalities of work; the length of time the party is employed to perform the task; whether the method of payment is by time spent or based on the entirety of the job; whether the work is part of the regular business of the master; whether the parties believe they are creating an employment or independent contractor relationship; and whether the master

7

and relationship, not bare conclusions. *Id.* at 568.

Plaintiff's vicarious liability problem is that she has not pleaded any facts sufficient to allege that Cruz-Mendoza (or Monique) could, as a matter of law, be considered an employee or agent of TQL. Plaintiff does not plead non-conclusory facts that TQL possessed any degree of control over Cruz-Mendoza's work beyond what an ordinary broker or shipper would have in making the initial arrangements for transportation. (*See generally* FAC.) As TQL's Motion explained, the Amended Complaint alleges only <u>four</u> facts specific to TQL. (*See* Mot. at 4.) There is not a single, non-conclusory, factual allegation showing how TQL itself directed Cruz-Mendoza's driving, hours, loading, or maintenance. (*See generally* FAC.)

In short, even if the Court treated the negligence allegations as properly pled against Cruz-Mendoza and Monique, Plaintiff has not plausibly alleged a predicate principal-agent or employer-employee relationship necessary to hold TQL vicariously liable for their conduct. The absence of facts satisfying the *Norton* factors as to TQL is fatal.

### D.    Plaintiff's Claims are Inadequately Pled under Colorado Law.

Plaintiff's claims are also inadequately pled under Colorado law as set forth below.

<u>Negligent Undertaking</u>. Plaintiff characterizes Claim VI as a negligent-undertaking claim but (even as she frames it in her Opposition) it is just a repackaged version of her negligent-hiring and supervision theories. She points to only conclusory allegations that TQL "undertook the performance of duties" to "adequately and safely transport goods on HWY 285" and then recites the same list of alleged failures in hiring, training, supervising, and monitoring Cruz-Mendoza that

---

is or is not in business. *Norton*, 949 P.2d at 567. Plaintiff has pleaded no facts supporting any of these factors as to TQL. (*See generally* FAC.)

8

appears in Claims III and V. (*See* Opp. at 20–22.) Those allegations describe how Plaintiff believes "Defendants" (the allegations in each negligent undertaking claim are identical) should have structured their internal safety policies and carrier-selection practices; they do not allege facts showing that TQL, "through affirmative acts, undertook a service to prevent the type of harm that befell the plaintiff, and that the plaintiff relied on [TQL] to perform those services." *Getzel v. ATS Specialized, Inc.*, No. 1:21-cv-02836-DDD-NRN, 2024 WL 446038, at *5 (D. Colo. Jan. 19, 2024) (citing *Jefferson Cnty. Sch. Dist. R-1 v. Justus By & Through Justus*, 725 P.2d 767, 770–71 (Colo. 1986)). Nor does Plaintiff identify any allegation that she herself (or the decedent) even knew about, let alone relied on, any supposed undertaking by TQL. *Wark v. United States* emphasizes that reliance on the undertaking is an essential element. 269 F.3d 1185, 1189–90 (10th Cir. 2001). Simply alleging TQL, as a broker, was "paid" to arrange the load, or that it "failed to exercise reasonable care" in doing so, does not convert a contractual broker role into a negligent undertaking claim under Colorado law. Because Plaintiff still does not allege an independent undertaking directed at her protection or any reliance, Count VI remains inadequately pled.

Negligent Hiring, Training, Supervision, and Selection. Plaintiff insists TQL "may be subject to liability for negligent hiring, training, supervision, and selection if they knew or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm." (Opp. at 32.) But Plaintiff never engages the predicate requirement for that theory: a plausible employer-employee relationship between TQL and the alleged tortfeasor. The *Trujillo* R&R Plaintiff relies on emphasizes the employer-employee relationship that must be pled for this theory of liability. *See Trujillo v. Moore Bros., Inc.*, No. 1:23-CV-00802-RM-SBP, 2024 WL 1219701, at *3–6 (D. Colo. Mar. 1, 2024). Plaintiff's conclusory allegations that *all Defendants*

employed either Cruz-Mendoza or Monique (*see, e.g.*, FAC ¶¶ 37–38) are not plausible.

Similarly, Plaintiff's negligent-selection theory as to Monique rests on allegations that "Defendants" knew of Monique's safety violations and FMCSA history and nevertheless used Monique as a carrier. (*See* Opp. at 16–20; 32.) But she still does not allege any facts about what TQL actually did to review, vet, or approve Monique – e.g., no description of any background check, safety review, or decision-making by TQL itself, and no facts tying any alleged omission by TQL to this particular load or crash. In the absence of non-conclusory, TQL-specific facts about how TQL selected or retained Monique, Plaintiff's allegations are not plausible.

Joint Venture / Joint Enterprise. On the joint-venture and joint-enterprise counts, Plaintiff's Opposition quotes black-letter standards and then asserts that her claims contain "adequate averments of material fact" because they allege the Defendants moved freight "for profit," communicated about the load, and "controlled the Tractor Trailer through [their] fully authorized agent, servant, and/or employee, Mr. Cruz-Mendoza." (Opp. at 23–25.) But those allegations simply restate the same group-pleaded conclusions that all Defendants shared control and that Cruz-Mendoza was the agent of all Defendants; they do not supply any new, concrete facts about TQL's role. Colorado law requires, among other things, a right to control the instrumentality for joint-venture liability. *See Bilsten v. Porter*, 516 P.2d 656, 658 (Colo. App. 1973). Plaintiff does not identify any allegation that TQL owned or leased the tractor or trailer, dictated routes or driving instructions, controlled loading or securement, or had any contractual right to direct how Cruz-Mendoza operated the vehicle. Instead, she relies on generalized assertions that "Defendants had the right to control Mr. Cruz-Mendoza" and "Defendants controlled the Tractor Trailer," without separating out what TQL itself supposedly did, or how a freight broker would have equal

10

"voice in the direction of the enterprise." Absent TQL-specific facts establishing a right to control the vehicle and the conduct of the driver, the joint-venture and joint-enterprise theories should be dismissed.

Derivative wrongful death claims. Plaintiff does not dispute that her wrongful death claim is a derivative claim. Thus, because all of her other claims fail, the derivative wrongful death claim should also be dismissed. *See Steedle v. Sereff,* 167 P.3d 135, 140 (Colo. 2007).

## III.    CONCLUSION

WHEREFORE, for all the reasons stated, Defendant Total Quality Logistics LLC requests that all claims by Plaintiff against it be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**Certification Regarding Use of Generative Artificial Intelligence for Drafting:** The undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

DATED: May 26, 2026

TAFT STETTINIUS & HOLLISTER LLP

*s/ Allison R. Burke*

*s/ Theodore J. O'Brien*
Allison Burke, (#54916 )
Theodore J. O'Brien, (#61623)
675 Fifteenth Street, Suite 2300
Denver, CO 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
Email:  aburke@taftlaw.com
        tobrien@taftlaw.com

*Attorneys for Defendant Total Quality Logistics, LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF and served via email on all counsel of record.


*s/ Faith I. Brockman*
Faith I. Brockman, Legal Assistant